1996 SD 46

**STATE of South Dakota, Plaintiff
and Appellee,**

v.

**David Lynn ANDERSON, Defendant
and Appellant.**

No. 19207.

Supreme Court of South Dakota.

Argued March 13, 1996.

Decided April 24, 1996.

Mark Barnett, Atty. Gen., Gary Campbell, Asst. Atty. Gen., Pierre, for plaintiff and appellee.

Mary Ann Giebink and Gary W. Conklin, Sioux Falls, for defendant and appellant.

GILBERTSON, Justice.

[¶ 1] David Lynn Anderson appeals his conviction by a jury for vehicular homicide and vehicular battery and further appeals his sentence imposed for these crimes. We affirm.

## FACTS AND PROCEDURE

[¶ 2] Sunday, October 2, 1994 was a rainy day and the streets of Sioux Falls, South Dakota, were wet. At 11:45 a.m., after attending church services, Galen Barta and his two sons stopped at a fast-food restaurant to pick up chicken for Sunday dinner and were on their way home. At the same time, Anderson was speeding down 10th Street. Various eye-witnesses estimated Anderson was traveling between 60–100 miles per hour. An accident reconstructionist would later testify Anderson was traveling between 86–100 miles per hour. The posted speed limit was 30 miles per hour. Anderson's vehicle hydroplaned on the wet streets and slid across the centerline into Barta's vehicle, killing Barta and injuring one of Barta's sons. Immediately after the accident, Anderson kicked open the door of his vehicle and fled, leaving his passenger, his girlfriend, Teresa Paxton, and the occupants of the Barta vehicle at the scene.

[¶ 3] Upon arriving home after fleeing his vehicle, Anderson telephoned his friend, Craig Quarve, with whom Anderson had been drinking the night before and into that Sunday morning. Anderson informed Quarve that Anderson had been involved in an accident, did not know if anyone was injured, and that he had called his parole officer and the police.

[¶ 4] Anderson was identified by police at the scene through his vehicle registration. At the same time police officers were knocking on Anderson's front door, Anderson was on the telephone with 911, whom he had called to turn himself in to law enforcement. The officers, through radio contact with the 911 dispatcher, had the dispatcher relay a message to Anderson to exit his house and turn himself in to the officers at his door. Anderson did so and inquired about the condition of his girlfriend and others involved in the accident.

[¶ 5] The police officers conducted field sobriety tests and, at 1:00 p.m., took a blood sample for further laboratory testing. Analysis of this sample resulted in between .0996% and .0970% blood alcohol levels. The police chemist who performed the analysis found this difference to be an acceptable deviation of no significance. Another chemist would later testify for the State that, according to the analysis of this sample taken one and one-quarter hours after driving, Anderson's blood alcohol level at the time of the accident was approximately .11%. Anderson's blood sample further revealed levels of methamphetamine and marijuana metabolites.

[¶ 6] Anderson was charged by indictment of a grand jury for violation of SDCL 22–16–41, vehicular homicide; SDCL 22–16–20, second-degree manslaughter; and SDCL 22–16–42, vehicular battery. Following a jury trial, Anderson was convicted of vehicular homicide and vehicular battery, but was acquitted of the second-degree manslaughter charge.[1] On May 10, 1995, he was sentenced, as a habitual offender, to 125 years imprisonment on the vehicular homicide conviction and 15[2] years imprisonment on the vehicular battery conviction. The sentencing court ordered both sentences to run concurrently, but consecutively to Anderson's remaining sentence for his parole violation.

[¶ 7] Anderson appeals his convictions and sentences to this Court raising the following issues:

1) Whether the indictment by which Anderson was charged with vehicular homicide was sufficient when it omitted an essential element of the crime?

2) Whether the trial court abused its discretion in denying Anderson's motion for a mistrial after a State's witness testified that Anderson had called Anderson's parole officer, thus violating

---

1. Anderson was charged in the alternative with vehicular homicide and second-degree manslaughter. The jury had the option of convicting him on one charge but not both. It found him guilty of the charge of vehicular homicide.

2. In its brief, the State calls to our attention the fact that the oral sentence of the court was 15 years but that the written sentence the trial court signed stated the sentence was to be 25 years. We have consistently held that it is the oral pronouncement of the court that constitutes the sentence of the court. *State v. Ford,* 328 N.W.2d 263, 267 (S.D.1982). We direct that an amended written sentence be executed to conform to the trial court's oral sentence.

the trial court's pretrial order forbidding reference to Anderson's parole status?

3) Whether the sentences imposed in this case constitute cruel and unusual punishment?

### ANALYSIS AND DECISION

[¶ 8] **1. Whether the indictment by which Anderson was charged with vehicular homicide was sufficient when it omitted an essential element of the crime?**

[¶ 9] Following selection of the jury in Anderson's trial but prior to the time the indictment was read, it came to the trial court's attention that the phrase "in a negligent manner" had been omitted from the indictment charging Anderson with vehicular homicide. SDCL 22–16–41 [3] sets forth the crime of vehicular homicide. The statute then provided:

> Any person who, while under the influence of an alcoholic beverage, any controlled drug or substance, or a combination thereof, without design to effect death, operates or drives a motor vehicle of any kind *in a negligent manner* and thereby causes the death of another person is guilty of vehicular homicide. Vehicular homicide is a Class 3 felony. In addition to any other penalty prescribed by law, the court may

**3.** In 1995, this statute was amended to include "unborn child" in defining "another person." This amendment is irrelevant to the present appeal.

**4.** Jury Instruction 15 set forth the elements of vehicular homicide:

> The elements of the offense of vehicular homicide each of which the state must prove beyond a reasonable doubt, are:
> 1. That the defendant on October 2, 1994, in Minnehaha County was under the influence of an alcoholic beverage, a controlled drug or substance, or combination thereof.
> 2. That the defendant on October 2, 1994, while under the influence of an alcoholic beverage, a controlled drug or substance, or combination thereof, operated or drove a motor vehicle *in a negligent manner*, and
> 3. *That the defendant's negligent operation or driving was the proximate cause of the death of Galen Ray Barta.*

also order that the driver's license of any person convicted of vehicular homicide may be revoked for a period of two years subsequent to release from incarceration. (emphasis added).

This statutory citation of SDCL 22–16–41 was properly cited in the charging indictment.

[¶ 10] In an attempt to cure the effect of this omission, the trial court instructed the State to read the indictment to the jury with the missing element reinserted. The trial court correctly instructed the jury on the negligence element of the vehicular homicide offense [4] and on the legal definition of negligence.[5] The State was required to prove all elements of the offense of vehicular homicide.

[¶ 11] Anderson argues the trial court was without authority to amend the indictment and cites to the federal law for the rule that an indictment cannot be amended except by the grand jury.[6] We agree that a trial court has no inherent authority to amend an indictment in any *material* respect. However it is clear, under the federal law cited to us by Anderson, that an indictment may be amended as to matters of form. *See Russell v. United States*, 369 U.S. 749, 770, 82 S.Ct. 1038, 1050, 8 L.Ed.2d 240, 255 (1962) (an indictment may not be amended except by resubmission to the grand jury, "unless the change is merely a matter of form"); *United States v. Sazenski*, 833 F.2d

(emphasis added).

**5.** Jury Instruction 18 provided the legal definition of negligence:

> Both the charges of Vehicular Homicide and Vehicular Battery require you to find that the defendant drove the vehicle *in a negligent manner. Negligence is a failure to exercise that care which a reasonably prudent person would have exercised under the same circumstances. It is conduct which falls below the standard of conduct of an ordinary reasonable person under the circumstances. Evidence of carelessness, inadvertence or other similar behavior is sufficient to sustain a conviction where negligence is required.*
> (emphasis added).

**6.** The basis of Anderson's objection goes to the effect the defective indictment purported to have on the jury trial. No objection nor complaint was made at trial that the grand jury could have been unaware of the actual elements of SDCL 22–16–41 in its deliberation.

741, 744 (8th Cir.1987) (the rule that the trial court generally has no power to amend an indictment "is inapplicable when the court's change in the indictment is one of form only."). State courts, applying state law, have also approved of such amendments. *See Rhymes v. State*, 638 So.2d 1270, 1275 (Miss.1994); *People v. DeSanto*, 629 N.Y.S.2d 460 (N.Y.App.Div.1995) (amendment of indictment was proper where amendment conformed indictment to evidence presented to grand jury, accurately reflected criminal act for which grand jury intended to indict defendant, and defendant was not prejudiced in any way); *State v. Skjonsby*, 319 N.W.2d 764, 784 (N.D.1982); *State v. Wilcox*, 110 Or.App. 490, 823 P.2d 1009, 1011 (1992); *State v. Adams*, 193 W.Va. 277, 456 S.E.2d 4, 8 (1995) ('amendment of form' occurs when the defendant is not misled in any sense, nor subjected to additional burdens of proof, nor otherwise prejudiced).

[¶ 12] The general function of an indictment is to apprise the defendant with reasonable certainty of the charge with which he is accused and to allow him to plead his acquittal or conviction as a bar to a subsequent prosecution for the same offense. *State v. Sinnott*, 72 S.D. 100, 30 N.W.2d 455, 456 (1947), *cert. denied*, 334 U.S. 844, 68 S.Ct. 1512, 92 L.Ed. 1768 (1948); *see also, State v. Oster*, 495 N.W.2d 305, 307 (S.D. 1993). SDCL 23A–6–14 provides that "[n]o indictment or information is insufficient, nor can the trial, judgment, or other proceeding thereon be affected, by reason of a defect or imperfection in its form, which does not prejudice the substantial rights of the defendant."

[¶ 13] This Court has addressed the issue of a defective indictment due to the omission of an essential element of the crime charged on two previous occasions. In *State v. Lodermeier*, 481 N.W.2d 614 (S.D.1992),[7] Lo-

dermeier had been charged with three counts of knowingly possessing property from which a serial number had been removed, a violation of SDCL 22–11–27. An essential element of that crime, omitted from the indictment, was that the serial numbers on the property were removed without the owner's consent. Lodermeier claimed this missing language caused the indictment to be defective. Finding that the trial court's actions cured the defect, we stated:

'An indictment which does not contain all the essential elements of the offense charged is defective....' *State v. Stone*, 467 N.W.2d 905, 907 (S.D.1991). However, we have held failure to set out an essential element of an offense in the charging instrument is not always fatal. *State v. Swallow*, 350 N.W.2d 606, 609 (S.D.1984). 'The defect is cured if the information sets forth the proper statute, the jury instructions set forth all the essential elements of the offense, and the State proves all the essential elements at trial.' *Stone*, 467 N.W.2d at 907 (quoting *Swallow*, 350 N.W.2d at 609). *Accord State v. Williams*, 297 N.W.2d 491, 493 (S.D.1980); *State v. Larson*, 294 N.W.2d 801, 802 (S.D.1980).

*Id.* at 619.

[¶ 14] In *State v. Lachowitzer*, 314 N.W.2d 307 (S.D.1982), Lachowitzer was indicted for perjury following his trial for petty theft in the first degree. Lachowitzer contended the indictment was fatally defective as it failed to allege the substance of the controversy in which the perjury was committed, the falsity of the matter, and that he intended to perjure himself. We reviewed the indictment and noted Lachowitzer had failed to make his objection in a timely manner and therefore had not preserved the issue for appeal. Nevertheless, we stated that:

In any event, even if the indictment failed to allege all of the essential elements of the

---

7. At oral argument, counsel for Anderson announced that she had personally inspected the trial court files of *Lodermeier* and *Lachowitzer* and that these were prosecutions based on informations rather than indictments, contrary to what was stated in our written opinions.

Neither Lodermeier nor Lachowitzer petitioned this Court for a rehearing on the basis that our opinions were erroneous on this, or any other,

point. Thus, the decisions became final. Anderson's argument amounts to a collateral attack on these cases by a non-party, many years after the fact. He cites no legal basis to do so. Upon further review of the *Lodermeier* and *Lachowitzer* files, at the request of this Court, counsel for Anderson now concedes the criminal offenses in those cases were charged by indictment and were correct as originally reported.

crime charged, it does set forth the statutes which defendant violated and the trial court instructed the jury on all of the essential elements of the crime and all the essential elements were proven at trial. This is sufficient to correct the indictment if it was defective. *State v. Larson*, 294 N.W.2d 801 (S.D.1980); *State v. Giuliano*, 270 N.W.2d 33 (S.D.1978).

*Id.* at 309.

[¶ 15] The trial court in the present case sought to cure the defective indictment by having the indictment read to the jury with the missing element inserted. Further, the trial court correctly instructed the jury on the elements of the charge including the element "in a negligent manner" that had been omitted from the indictment. Finally, the State was required to prove all of the essential elements of the crime charged. We find the actions taken by the trial court herein properly cured the defect in the indictment.

[¶ 16] Anderson fails to show any violation of his constitutional rights by the trial court's actions or that he was prejudiced in any way.[8] As the statute was correctly cited in the indictment, the defect was one of form, the amendment of which did not prejudice any of Anderson's substantive rights. At oral argument, counsel for Anderson failed to identify any prejudice suffered by the inadvertent omission in the indictment and conceded Anderson received a fair trial. Further, under the precedent cited above, we hold that the defect in the indictment charging Anderson with vehicular homicide was corrected by the trial court's remedial measures in this case. We affirm on this issue.[9]

[¶ 17] Although Anderson now claims a similar defect appeared in the indictment charging him with vehicular battery, he did not object to the alleged defect as required by SDCL 23A–8–3(3). This issue is not properly before us on appeal due to Anderson's failure to object in order to preserve the record. *Lachowitzer*, 314 N.W.2d at 309. However, we find any alleged defect in this charge was also corrected by the trial court.[10]

[¶ 18] 2. **Whether the trial court abused its discretion in denying Anderson's motion for a mistrial after a State's witness testified that Anderson had called Anderson's parole officer, thus violating the trial court's pretrial order forbidding reference to Anderson's parole status?**

[¶ 19] The trial court granted Anderson's motion in limine to preclude any reference at trial to the fact that Anderson was on parole at the time of the October 2, 1994 accident. In granting the motion, the trial court ordered the State to instruct its witnesses not to mention the subject of Anderson's parole. The third witness called by the State, Craig Quarve, testified on direct examination that he had received a telephone call from Anderson that morning in which Anderson stated "they had been in an accident, and he didn't know if anybody was

---

8. If Anderson felt he needed a more detailed notice in the indictment to enter an informed plea and effectively defend against the charges, he could have filed for a bill of particulars. *State v. Wells*, 276 N.W.2d 679, 692 (N.D.1979). *See also State v. Wurtz*, 436 N.W.2d 839, 842 (S.D. 1989) and *State v. Miller*, 429 N.W.2d 26, 40 (S.D.1988). In *State v. Elliston*, 159 N.W.2d 503, 506 (Iowa 1968), the court held that where an information used the name of the offense, the code number and contained "some of the phraseology" of the statute, if the defendant desired further details, he should have sought a bill of particulars.

9. Although not raised by the State as a defense to this issue, we would note that SDCL 23A–8–3(3) generally requires challenges to the sufficiency of the indictment be made prior to trial. *See State*

*v. Haase*, 446 N.W.2d 62, 64–65 (S.D.1989) for an examination of this statute and exceptions to its general rule.

10. With *Lachowitzer* and *Lodermeier*, this is now the third time the issue of a defective indictment has recently come before us. All three cases come out of Minnehaha County. Substantial time spent on this issue by counsel, the trial courts and this Court, could have easily been avoided by proofreading the indictments after they were prepared. While we have held there is no basis to reverse a conviction on such an easily avoidable error, a far different issue would arise where a defendant pled guilty to an indictment that failed to charge him with all material elements. In such a fact situation, the subsequent safeguards adopted by the trial court in *Lachowitzer, Lodermeier* and this case would be absent.

hurt; that he'd called his parole officer and the police[.]"

[¶ 20] Immediately after cross-examination of this witness, the parties met outside of the jury's presence wherein Anderson moved for a mistrial. The judge withheld ruling on the motion until all the evidence was presented and it could be determined whether Anderson was prejudiced by Quarve's comment. Before the next witness was called, the trial court admonished the jury to ignore the challenged remark as it was irrelevant to the case. At the end of the presentation of the evidence in this three-day trial, Anderson renewed his motion which the court then denied, finding the statement harmless in light of the court's earlier admonishment and all of the evidence presented by the State.

[¶ 21] In reviewing the grant or denial of a motion for mistrial, we have noted that:

Trial courts have considerable discretion not only in granting or denying a mistrial (*State v. Closs*, 366 N.W.2d 138, 143 (S.D. 1985)) but also in determining the prejudicial effect of a witness' statements. *State v. Michalek*, 407 N.W.2d 815, 818 (S.D. 1987). Only when this discretion is clearly abused will this court overturn the trial court's decision. *Id.; State v. Farley*, 290 N.W.2d 491, 494 (S.D.1980).

To justify the granting of a mistrial, an actual showing of prejudice must exist. *Closs*, 366 N.W.2d at 143; *State v. Clabaugh*, 346 N.W.2d 448, 451 (S.D.1984). Prejudicial error for purposes of determining whether error constitutes grounds for mistrial is error 'which in all probability must have produced some effect upon the jury's verdict and is harmful to the substantial rights of the party assigning it.' *Michalek*, 407 N.W.2d at 818 (citing *State v. Dokken*, 385 N.W.2d 493, 498 (S.D. 1986)).

*State v. Myers*, 464 N.W.2d 608, 609–10 (S.D. 1990) (quoting *State v. Blalack*, 434 N.W.2d 55 (S.D.1988)); *Oster*, 495 N.W.2d at 310–11.

[¶ 22] In *Blalack*, 434 N.W.2d at 58, we held that where the trial court directed the word "parole" not be mentioned, inadvertent mention of the defendant's parole status by a witness did not automatically result in a mistrial. The burden in such a situation falls upon the defendant to make an actual showing of prejudice. *Cf. State v. Koepsell*, 508 N.W.2d 591, 595 (S.D.1993) (citing *Delaware v. Van Arsdall*, 475 U.S. 673, 680, 106 S.Ct. 1431, 1436, 89 L.Ed.2d 674, 684 (1986)). On appeal, the burden again falls upon the convicted defendant to establish prejudicial error. *State v. Fender*, 358 N.W.2d 248, 254 (S.D.1984).

[¶ 23] The rules of evidence exist to protect the rights of the accused. There is no question that the trial court's pretrial order forbidding reference to Anderson's parole status was violated in this case. Nevertheless, absent a clear abuse of discretion and an actual showing of prejudice, the trial court's decision will not be disturbed on appeal. *Oster*, 495 N.W.2d at 310. "The test for determining if the trial court abused its discretion is not whether this Court would have made an original like ruling, but whether we believe a judicial mind, in view of the law and circumstances, could have reasonably reached the same conclusion." *Id.*

[¶ 24] No actual showing of prejudice has been made and we find no abuse of discretion in the trial court's denial of Anderson's motion for a mistrial. Proof that Anderson committed the crimes for which he was convicted herein was overwhelming, especially in light of: (1) a letter Anderson sent to the victim's widow shortly after the accident and received into evidence at trial in which Anderson apologized, admitted his actions and that he was driving drunk; (2) the numerous eye-witnesses to Anderson's reckless driving and speeding; and (3) positive identification of Anderson as the driver of the vehicle that collided with the Barta vehicle. After examining the record, we are not left with a clear impression the verdict would have been different absent this inadvertent reference. We affirm on this issue.

[¶ 25] **3. Whether the sentences imposed in this case constitute cruel and unusual punishment?**

[¶ 26] Anderson challenges his sentence of 125 years for the vehicular homicide as cruel and unusual punishment. The crux of his argument is that this sentence is sub-

stantially higher than similar sentences given for similar crimes in Minnehaha County.

[¶ 27] Anderson pled guilty to the habitual offender information filed by the State that enhanced his potential sentence for the Class 3 vehicular homicide conviction to a Class 1 felony.[11] It enhanced his potential sentence for the Class 4 vehicular battery conviction to a Class 2 felony. Class 1 felonies carry a maximum sentence of life imprisonment and Class 2 felonies, a maximum of 25 years imprisonment. SDCL 22–6–1(3); 22–6–1(4). In addition, a fine of $25,000 may be imposed upon each conviction. Neither class carries a minimum sentence.

[¶ 28] The trial court sentenced Anderson to 125 years imprisonment for vehicular homicide and 15 years for vehicular battery, sentences to run concurrently. However, the trial court ordered both sentences were to run consecutively to Anderson's remaining sentence for his parole violation. *See State v. Karp,* 527 N.W.2d 912, 914 (S.D.1995). Anderson's sentences are clearly within the statutory limits.

[¶ 29] This Court's standard of review of a constitutional challenge of a criminal sentence is well established.

> On appeal, we first determine whether the sentence 'shocks the conscience' or is so disproportionate to the crime that it activates the Eighth Amendment 'within and without jurisdiction' proportionality tests. *State v. Lykken,* 484 N.W.2d 869, 879 (S.D. 1992); *State v. Basker,* 468 N.W.2d 413, 418 (S.D.1991). *Accord State v. Andrews,* 393 N.W.2d 76, 82–83 (S.D.1986); *State v. Weiker,* 366 N.W.2d 823, 827 (S.D.1985) *(Weiker II).* 'Absent a sentence which is so excessive in duration that it shocks the conscience of the court, it is well settled in South Dakota that a sentence within statutory limits is not reviewable on appeal.' *Lykken,* 484 N.W.2d at 879; *State v. Janssen,* 371 N.W.2d 353, 356 (S.D.1985)(citing cases).

*State v. Ferguson,* 519 N.W.2d 50, 53–54 (S.D.1994) (quoting *State v. Castaneira,* 502

N.W.2d 112, 114–15 (S.D.1993)); *State v. Gehrke,* 491 N.W.2d 421, 423 (S.D.1992). This Court has developed a two-fold test to determine whether the sentence is so constitutionally offensive as to shock the conscience:

> First, is the punishment so excessive or so cruel, 'as to meet the disapproval and condemnation of the conscience and reason of men generally.' And second whether the punishment is so excessive or so cruel as to shock the collective conscience of this court.

*State v. Kaiser,* 526 N.W.2d 722, 726 (S.D. 1995) *(Kaiser II).*

[¶ 30] A sentencing court has broad discretion in determining the sentence to be imposed. *Bult v. Leapley,* 507 N.W.2d 325, 327 (S.D.1993) *(Bult II).* "Where the court is asked to review a punishment within the statutory limits, the question is whether the trial court abused its discretion." *Kaiser II,* 526 N.W.2d at 726. Likewise, the United States Supreme Court reasoned in *Solem v. Helm,* 463 U.S. 277, 290, 103 S.Ct. 3001, 3009, 77 L.Ed.2d 637, 649 (1983) that: "[r]eviewing courts, of course, should grant substantial deference to the broad authority that legislatures necessarily possess in determining the types and limits of punishments for crimes, as well as to the discretion that trial courts possess in sentencing convicted criminals." Outside of capital punishment cases, "*successful* challenges to the proportionality of particular sentences (will be) exceedingly rare." *Solem,* 463 U.S. at 289–90, 103 S.Ct. at 3009, 77 L.Ed.2d at 649 (emphasis original).

[¶ 31] "The purposes of sentencing are retribution, deterrence, both individual and general and rehabilitation ... One purpose is not preeminent over any of the others." *State v. Ramos,* 545 N.W.2d 817 (S.D.1996), ¶ 14. The sentencing court bears primary responsibility for determining priority to be given applicable sentencing goals. Rehabilitation need not be accorded paramount significance in all cases. *Harvey v. State,* 691 P.2d 1061, 1062 (Alaska App.1984).

---

**11.** In 1993, one year prior to Anderson's commission of the crime in this case, the South Dakota Legislature amended the vehicular homicide statute, SDCL 22–16–41, to increase the unenhanced classification from a Class 4 to a Class 3 felony. 1993 SD Laws ch. 174, § 1.

Rather, the sentencing court determines, on a case-by-case basis, which theory is accorded priority. 1 Wharton's Criminal Law § 4 (15th ed 1993). The primary criterion in sentencing is good order and protection of the public and society, and all other factors must be subservient to that end. *State v. Toohill*, 103 Idaho 565, 650 P.2d 707 (App. 1982); 24 CJS Criminal Law § 1460 (1989).

[¶ 32] The trial court, in determining a fitting sentence, "should 'acquire a thorough acquaintance with the character and history of the man before it'" which includes examination of the defendant's "'general moral character, mentality, habits, social environment, tendencies, age, aversion or inclination to commit crime, life, family, occupation, and previous criminal record.'" *State v. Pack*, 516 N.W.2d 665, 667–68 (S.D. 1994). "[T]he punishment should fit the offender and not merely the crime." *Williams v. New York*, 337 U.S. 241, 247, 69 S.Ct. 1079, 1083, 93 L.Ed. 1337, 1342 (1949). This includes the circumstances of the offense "together with the character and propensities of the offender." *Gregg v. Georgia*, 428 U.S. 153, 189, 96 S.Ct. 2909, 2932, 49 L.Ed.2d 859, 883 (1976) (citations omitted).

[¶ 33] Here, the sentencing court reviewed information that revealed Anderson was 28 years old when this crime occurred, had previously spent considerable time in the penitentiary, and was currently on parole for a sentence as a result of his involvement with drugs and alcohol. His parole violation and this crime occurred when he was under the influence of drugs and alcohol. The sentencing court also noted Anderson had had opportunities in the past to show a desire to be rehabilitated but that showing was not forthcoming. Information before the sentencing court in the presentence investigation report demonstrated that Anderson had driven very fast in the past when he was upset and, after being advised by his passenger at that time that somebody could be injured, Anderson stated "it really didn't matter." The court noted at the sentencing hearing in attempting to explain Anderson's behavior:

> He was aggravated and didn't care. He didn't care if he killed himself. He didn't care if he killed his girlfriend or harmed any of these people. In fact, at the accident he doesn't stop to see if anybody is injured. He runs. That doesn't paint a picture of somebody that's going to be rehabilitated[.]

[¶ 34] We cannot agree with Anderson's claim that the trial court paid "little attention to the commonly accepted goals of punishment: retribution, deterrence, and rehabilitation." The trial court in this case properly considered the need to protect society as well as Anderson's potential for rehabilitation. This determination of potential for rehabilitation is a question of fact for the trial court and will not be overturned unless clearly erroneous. *Weiker II*, 366 N.W.2d at 825.

[¶ 35] We review a sentence within the statutory limits under an abuse of discretion standard. *Kaiser II*, 526 N.W.2d at 726. Our review of the sentence and the sentencing hearing reveals no abuse of discretion by the trial court here. The sentences imposed do not shock this Court's conscience. We affirm.

[¶ 36] MILLER, C.J., and SABERS, AMUNDSON and KONENKAMP, JJ., concur.