#24062-aff in pt & rev in pt & rem-SLZ
**2007 SD 122**

IN THE SUPREME COURT
OF THE
STATE OF SOUTH DAKOTA

\* \* \* \*

STATE OF SOUTH DAKOTA,                    Plaintiff and Appellee,

    v.

JOSHUA STEVEN BECKLEY,                    Defendant and Appellant.

\* \* \* \*

APPEAL FROM THE CIRCUIT COURT
OF THE SECOND JUDICIAL CIRCUIT
MINNEHAHA COUNTY, SOUTH DAKOTA

\* \* \* \*

HONORABLE PETER H. LIEBERMAN
Judge

\* \* \* \*

LAWRENCE E. LONG
Attorney General

CRAIG M. EICHSTADT
Deputy Attorney General                    Attorneys for plaintiff
Pierre, South Dakota                       and appellee.

STEVEN R. BINGER                           Attorney for defendant
Sioux Falls, South Dakota                  and appellant.

\* \* \* \*

CONSIDERED ON BRIEFS
ON FEBRUARY 13, 2007

OPINION FILED 12/5/07

#24062

ZINTER, Justice

[¶1.] Joshua Beckley (Beckley) appeals his conviction of possession of a controlled substance. He contends that the trial court failed to properly advise him of his right to compel witnesses prior to receiving his guilty plea. He also contends that the trial court abused its discretion in refusing to continue the sentencing hearing to allow a psychological evaluation. We affirm on the advisement of rights issue, but reverse and remand for resentencing for the failure to grant the continuance.

[¶2.] After being previously told to leave, Beckley was observed videotaping a young woman at a retail store in Sioux Falls. He was again asked to leave and law enforcement responded. Earlier that day Beckley was involved in another incident where he stopped two young women in a car, approached them with a video camera, and asked them to get out of their vehicle. He claimed he was a city employee investigating littering. The women refused his request, left the scene, and reported the incident to law enforcement.

[¶3.] During a search incident to his subsequent arrest, methamphetamine was found in Beckley's sock and a methamphetamine pipe with residue was found in his vehicle. While he was free on bond on these charges, Beckley was observed taking pictures of a young girl from behind. In yet another incident, Beckley was observed staring in windows and attempting to enter a university dormitory wearing only underwear and a tank top. In a final incident, Beckley was arrested for driving under the influence. As a result of the foregoing conduct, Beckley was

charged with possession of methamphetamine, possession of drug paraphernalia, unlawful occupancy, window peeking and third offense driving under the influence.

[¶4.] On April 6, 2005, Beckley was arraigned before Magistrate Judge Julie Irvine. During the arraignment he was advised of his constitutional and statutory rights, including the right to compel witnesses. On May 16, 2005, Beckley appeared before Circuit Judge Peter H. Lieberman for a second arraignment. Beckley was again advised of his constitutional and statutory rights, including the right to compel witnesses. Thereafter, Beckley entered into a plea agreement under which he agreed to plead guilty to possession of methamphetamine in exchange for a dismissal of the remaining charges and reduction of the third offense DUI to a misdemeanor.

[¶5.] On January 13, 2006, Beckley appeared with counsel at his change of plea hearing. Judge Lieberman again informed Beckley of his constitutional and statutory rights, but this time did not inform him of his right to compel witnesses. The court did, however, canvass defense counsel concerning Beckley's understanding of his rights. Counsel indicated Beckley understood the consequences of his plea after their "considerable discussion." Beckley then entered a guilty plea to possession of methamphetamine. The DUI charge was the subject of a separate proceeding that is not at issue in this appeal.

[¶6.] On March 8, 2006, Beckley appeared for sentencing on the methamphetamine offense. Judge Lieberman asked Beckley's separate counsel on the DUI charge if she and Beckley had also discussed his constitutional and statutory rights. She indicated they had. Defense counsel on the methamphetamine charge then attempted to call two sentencing mitigation

witnesses and sought a continuance to obtain psychological testing at the defendant's own expense to be utilized at sentencing. This motion for the continuance was accompanied by a subpoena for Jack Dodge, a former doctor and one of Beckley's fellow inmates who was awaiting sentencing on federal drug charges. Counsel sought to call Dodge as a witness to Beckley's mental state, which would have further supported the request for the psychological testing in mitigation of punishment. A handwritten note from Dodge explained the nature of his proposed testimony. The motion was finally supported by an affidavit of counsel indicating that the continuance was necessary because of a conflict in the scheduling of a professional examination. The circuit court denied the request to call the witness and denied the request for a continuance. Beckley was sentenced to eight years in the state penitentiary. He appeals raising two issues.

I.

[¶7.] **Whether Beckley should be allowed to withdraw his guilty plea because the sentencing court did not advise him of his right to compel witnesses prior to receiving the guilty plea.**

[¶8.] "[I]n order for a conviction based upon a guilty plea to stand the plea must be intelligent and voluntary. Such a plea is intelligent and voluntary when the accused has a full understanding of his constitutional rights and, having that understanding, waives these rights by a plea of guilty." Lodermeier v. State, 273 NW2d 163, 164 (SD 1978) (citations omitted).[1] SDCL 23A-7-4 (Rule 11(c))

---

1.   Furthermore, "a plea of guilty cannot stand unless the record in some manner indicates a free and intelligent waiver of the three constitutional rights mentioned in *Boykin* self-incrimination, confrontation and jury trial and an understanding of the nature and consequences of the plea." *Lodermeier,* 273 NW2d at 165. Beckley does not contend he was not properly advised of these *Boykin* rights. *See* Boykin v. Alabama, 395 US 238, 243, 89 SCt 1709, 1712, 23 LEd2d 274, 280 (1969).

"establishes a procedure for the judge to follow to ensure that a guilty plea is knowing and voluntary." State v. Goodwin, 2004 SD 75, ¶7, 681 NW2d 847, 850. That statute provides:

> Before accepting a plea of guilty or nolo contendere a court must address the defendant personally in open court, subject to the exception stated in 23A-7-5, and inform him of, and determine that he understands, the following:
>
> (1) The nature of the charge to which the plea is offered, the mandatory minimum penalty provided by law, if any, and the maximum possible penalty provided by law;
>
> (2) If the defendant is not represented by an attorney, that he has the right to be represented by an attorney at every stage of the proceedings against him and, if necessary, one will be appointed to represent him;
>
> (3) That he has the right to plead not guilty or to persist in that plea if it has already been made, and that he has the right to assistance of counsel, the right to confront and cross-examine witnesses against him, and the right not to be compelled to incriminate himself;
>
> (4) That if he pleads guilty or nolo contendere there will not be a further trial of any kind, so that by pleading guilty or nolo contendere he waives the right to a trial, the right to confront and cross-examine witnesses against him, and the right not to be compelled to incriminate himself; and
>
> (5) That if he pleads guilty or nolo contendere, the court may ask him questions about the offense to which he has pleaded, and if he answers these questions under oath, on the record, and in the presence of counsel, his answers may later be used against him in a prosecution for perjury.

[¶9.] Although SDCL 23A-7-4 does not specifically require an advisement of the right to compel witnesses, both the United States and South Dakota

Constitutions guarantee that right. US Const amend VI; SD Const art VI, sec 7.

This Court has reiterated the United States Supreme Court's characterization of

the right to compulsory process:

> The right to offer the testimony of witnesses, and to compel their attendance, if necessary, is in plain terms the right to present a defense, the right to present the defendant's version of the facts as well as the prosecution's to the jury so it may decide where the truth lies. Just as an accused has the right to confront the prosecution's witnesses for the purpose of challenging their testimony, he has the right to present his own witnesses to establish a defense. This right is a fundamental element of due process of law.

State v. Wiegers, 373 NW2d 1, 8 (SD 1985) (quoting Washington v. Texas, 388 US

14, 19, 87 SCt 1920, 1923, 18 LEd2d 1019, 1023 (1967)).[2]

[¶10.]      Although compulsory process has been recognized as a fundamental

element of due process, the failure to advise a defendant of all constitutional and

statutory rights does not necessarily vitiate a guilty plea. For example, SDCL 23A-

7-4 has been characterized as only a "procedural safeguard" for determining that a

guilty plea is knowing and voluntarily entered. State v. Miller, 2006 SD 54, ¶18,

717 NW2d 614, 620. "There is no requirement that the record show an express

enumeration by the court nor an express waiver by the defendant . . . as a condition

precedent to a voluntary and intelligent guilty plea." State v. Moeller, 511 NW2d

803, 810 (SD 1994) (citation omitted). Furthermore, even "[s]pecific articulation of

the *Boykin* rights by the trial judge is not an indispensable requisite for the record

to establish a valid plea." *Id.* "It is sufficient when the record *in some manner*

shows the defendant entered his plea understandingly and voluntarily." *Id.* "The

---

2.      Federal Rule of Criminal Procedure 11(b)(1)(e) specifically requires an advisement of the defendant's right to compel the attendance of witnesses.

record need only show that he knew of his rights and the consequences of his guilty plea." *Id.*

[¶11.] Beckley, however, cites this Court's decision in *State ex rel. Henning v. Jameson*, 71 SD 144, 22 NW2d 731 (1946), for the proposition that the failure to advise of the right to compel witnesses before receiving a guilty plea requires automatic reversal. In that case, this Court held that a failure to advise a *pro se* defendant of various rights, including the right to confront the witnesses against him, the right to compulsory process for the witnesses on his behalf, and the right to a speedy public trial by an impartial jury of the county was a jurisdictional defect entitling the defendant to habeas relief when the record indicated the defendant did not sufficiently understand these rights. *Id.* at 732-33. At the time *Henning* was decided, this Court recognized a presumption that a defendant represented by counsel waived these rights by a guilty plea; however, a *pro se* defendant did not. *Id.* This dichotomy was abandoned following the United States Supreme Court decision in *Boykin*, which required the record to affirmatively establish the waiver of the three constitutional rights mentioned in *Boykin*- self-incrimination, confrontation and jury trial. Nachtigall v. Erickson, 85 SD 122, 128, 178 NW2d 198, 201 (1970).

[¶12.] Under the modern framework, the more analogous South Dakota cases are *Lodermeier*, 273 NW2d at 165, and *State v. Gagne*, 421 NW2d 502, 503 (SD 1988). In *Lodermeier*, the defendant was not advised of his right to confront witnesses (a *Boykin* right) or his right to compel witnesses on his behalf (a non-*Boykin* right). 273 NW2d at 165. In *Gagne*, the defendant was not advised of his right to confront and cross-examine witnesses (a *Boykin* right) or his right to

compulsory process to secure witnesses (a non-*Boykin* right). 421 NW2d at 503. In both cases, the Court reversed in accord with *Boykin*. However, in this case Beckley was advised of his *Boykin* rights, and *Boykin* rights do not include compulsory process.

[¶13.] Additionally, in both *Lodermeier* and *Gagne,* the record did not indicate the defendants were otherwise aware of their rights. "The standard was and remains whether the plea represents a voluntary and intelligent choice among the alternative causes of action open to the defendant." *Moeller,* 511 NW2d at 810. Therefore, although it is advisable to inform a defendant of his right to compulsory process, not doing so is not automatic reversible error. As the Colorado Supreme Court explained:

> [W]e reject the defendant's claim that the trial court's advisement did not satisfy the requirements of due process because the trial court failed to advise the defendant that he could subpoena out-of-state witnesses at the state's expense. Due process of law does not require that a court inform a defendant of every conceivable constitutional right that might be waived by a guilty or *nolo contendere* plea. Carried to its logical extreme, this argument would require a court before accepting a guilty or *nolo contendere* plea, to inform a defendant, among other things, of his right to be free from cruel and unusual punishment, his right to be free from unreasonable searches and seizures, his right to be protected against being placed twice in jeopardy for the same crime, and his right to reasonable bail.

People v. Drake, 785 P2d 1257, 1272 (Colo 1990). *See also* State v. Moses, 127 P3d 330, 335-40 (Kan 2006) (recognizing the failure to advise a defendant of compulsory process and other rights does not automatically result in the withdrawal of a guilty plea and examining the circumstances surrounding that plea including a written waiver, representation by counsel, familiarity with the criminal justice system and

defendants familiarity with the case against him and the benefit of the plea agreement); State v. Salter, 515 So2d 609, 610 (LaCtApp 1987) (concluding "[t]he right to compulsory process is not one of the rights required by the trial judge in order to [e]nsure that a guilty plea is knowingly and intelligently made."); State v. Rau, 367 NW2d 613, 616 (MinnCtApp 1985) (holding failure to advise of right to subpoena witnesses does not affect the validity of a guilty plea); State v. Miller, 518 P2d 127, 129 (Ariz 1974) (holding failure to advise of right to compel witnesses and plead not guilty are not required by *Boykin* and there "is absolutely no requirement that [defendant] be advised of any other rights in order to be able to enter a valid guilty plea.").

[¶14.]     Rather than mechanically determining whether certain rights were given, we look to "the totality of the circumstances when ascertaining whether a plea was made knowingly and voluntarily." *Goodwin*, 2004 SD 75, ¶11, 681 NW2d at 852. "In examining the 'totality of the circumstances' we have taken into consideration the following factors: the defendant's age; his prior criminal record; whether he is represented by counsel; the existence of a plea agreement; and the time between advisement of rights and entering a plea of guilty." *Goodwin,* 2004 SD 75, ¶ 11, 681 NW2d at 852 (internal citations omitted).

[¶15.]     In this case, Beckley was thirty years old; he was represented by counsel; and although this was his first felony, he had a prior criminal history of driving under the influence, theft, reckless driving and driving without a license. In addition to the knowledge gained from the foregoing experiences, he was advised on three occasions, including the day he entered his guilty plea, of the required constitutional and statutory rights in accord with *Boykin* and SDCL 23A-7-4. Most

significantly, he negotiated a plea agreement and was twice advised of his right to compel witnesses. Thereafter, Beckley actually subpoenaed a witness to testify at his sentencing hearing, demonstrating that he was aware of this right. On this record, we conclude that Beckley's plea was not unknowingly or involuntarily entered simply because the trial court did not advise him of his right to compel witnesses a third time.

II.

[¶16.] **Whether the trial court abused its discretion in refusing to continue the sentencing hearing to allow Beckley to obtain a psychological evaluation.**

[¶17.] On March 2, 2006, six days before sentencing, Beckley moved to continue the sentencing hearing in order to obtain a psychological evaluation at his own expense. The motion was supported by an affidavit from defense counsel indicating that a professional evaluator (Michael McGrath) had been contacted but was unable to complete the evaluation in time for the sentencing hearing. Counsel indicated he only learned of this on March 1, 2006. The motion was also supported by the letter from Dodge, the fellow inmate and former doctor, recommending that Beckley receive a psychological examination.

[¶18.] At the sentencing hearing, defense counsel again sought permission to call Dodge as a witness to Beckley's mental state. The trial court immediately asked to see both attorneys in chambers for an off-the-record discussion. Upon returning, the court indicated a record needed to be made to support the need for the psychological evaluation. After argument from counsel, the trial court denied the request to call Dodge, finding he lacked credibility and the presentence

investigation was "extremely complete." The trial court also denied permission to allow Beckley's foster father to testify.

[¶19.] After the testimonial requests were denied, defense counsel proceeded to argue the request for continuance to obtain the psychological evaluation from the professional evaluator. The trial court denied that motion stating:

> I have a report from the Human Services Center and I also have an extensive letter from your client. Okay, so [defense counsel] we are going to proceed with sentencing and if you would, please, proceed with your sentencing comments.

This possession of other psychological information is the only reasoning reflected in the record for denial of the motion for continuance. Although Beckley is not appealing the trial court's denial of the witness' testimony, he argues that the trial court erred in refusing to continue the hearing. Beckley contends that an evaluation would have allowed him to present psychological evidence in mitigation at the sentencing hearing, particularly concerning his sexual proclivities.

[¶20.] A trial court's decision to grant or deny a continuance is reviewed under an abuse of discretion standard. State v. Letcher, 1996 SD 88, ¶29, 552 NW2d 402, 407. "An abuse of discretion refers to a discretion exercised to an end or purpose not justified by, and clearly against reason and evidence." State v. Asmussen, 2006 SD 37, ¶13, 713 NW2d 580, 586 (citations omitted).

[¶21.] "In deciding whether to grant a continuance, a trial court must consider: (1) whether the delay resulting from the continuance will be prejudicial to the opposing party; (2) whether the continuance motion was motivated by procrastination, bad planning, dilatory tactics or bad faith on the part of the moving party or his counsel; (3) the prejudice caused to the moving party by the trial court's

refusal to grant the continuance; and, (4) whether there have been any prior continuances or delays." *In re J.G.R.*, 2004 SD 131, ¶15, 691 NW2d 586, 591. Furthermore, before imposing sentence, the trial court must acquire a thorough acquaintance with the character and history of the defendant:

> [T]he circuit court must "acquire a thorough acquaintance with the character and history of the [person] before it." The *Hinger/Bonner* factors are the appropriate factors for the circuit court to consider when determining sentencing, which include the defendant's "general moral character, mentality, habits, social environment, tendencies, age, aversion or inclination to commit crime, life, family, occupation, and previous criminal record." In addition, the trial court considers the rehabilitation prospects of the particular defendant.

State v. Blair, 2006 SD 75, ¶27, 721 NW2d 55, 63-64 (internal citations omitted).

[¶22.] In this case, the trial court was presented with a presentence investigation detailing Beckley's comments regarding the offense. It also included personal information such as Beckley's family, marital, educational, military, religious, medical, employment and financial history. The presentence report finally included Beckley's plea agreement, prior criminal record, and a discussion of his drug and alcohol problems. Although the professional evaluations contained in the presentence report mentioned past problems with depression, as well as sexual, emotional and physical abuse, they did not go into any detail about those issues. Those evaluations focused on Beckley's drug and alcohol addiction, which was understandable considering the fact that Beckley was being sentenced for the possession of a controlled substance. The presentence report did, however, specifically recommend further assessment in the areas of Beckley's sexual abuse and depression. It was also recommended that Beckley "[b]e seen by a physician/psychiatrist through the Community Health Clinic for medical assistance

and possible medication management for mental health issues." There is no indication that such assessments were conducted, and the presentence report does not include any detail on these issues.[3]

[¶23.]    Despite these omissions and the denial of Beckley's request for his own psychological evaluation, the sentencing transcripts indicate that the court proceeded with sentencing focusing on Beckley's sexual proclivities. In fact, that was the trial court's main concern and motivating factor for the sentence it imposed. The trial court's statement in sentencing speaks for itself:

> I don't even know where to start here. If this were just a methamphetamine case, I would treat it as I do with other possession of methamphetamine cases where we have a jail sentence and a person goes into treatment and I try to keep them out of the penitentiary. I am sorry to say that this is more—more than a methamphetamine case. He is being sentenced on methamphetamine, but as we all know I am required to take into consideration all of the facts of someone's life and it isn't the possession of methamphetamine that is of greater concern to me, in this case, it is the sexual proclivity of Mr. Beckley. It appears to me that during the period of time that he was under the jurisdiction of this Court or immediately before that time he was involved in three separate sexual incidents and I share [victim's father's] concern about the defendant involving his daughter. When I hear that this man had weapons on him, that he was stopping young girls and video taping them and saying that he was a personal investigator for the City and I heard he had knives on his person, [victim's father], you are not the only one who got the chills, I did also.

---

3.    SDCL 23A-27-6 provides:

> The report of a presentence investigation shall contain any prior criminal record of the defendant and such information about his characteristics, his financial condition, and the circumstances affecting his behavior as may be helpful in imposing sentence or in granting probation or in the correctional treatment of the defendant, and such other information as may be required by the court.

* * *

We then have the incident at the [university] where Mr. Beckley is in underwear and he is peeking into the windows of young women, and then I also remember that the State brought Mr. Beckley before this Court to have his bond revoked based on the fact that he was out at the driver's license bureau and, again, was taking photographs and it should be noted that he wasn't taking pictures of any women's behinds, but, again, my memory serves me that he was taking photographs of the behinds of very young women. This is a real problem here and the particular problem is that Mr. Beckley, under the jurisdiction of this Court, knew that he was facing penitentiary time and despite that was unable to control his sexual proclivities.

Frankly, in this case, I have reached the point where I am frightened. I am frightened for the young women of this community as to where this is going. Mr. Beckley has knives, he's stopping women saying he is a private investigator, taping them, and all the while he was under the supervision of this Court. This situation has gotten too scary for me to take any chances.

You talk about throwing someone else away, I don't throw people away, I work with people who have methamphetamine problems, but when someone keeps committing sexual crimes, the Court gets scared and I am scared. Now, at some point the balance has to shift. I have some concern for Mr. Beckley and I realize that he has serious problems, but at some point the balance of the scale has to shift towards the safety of girls in our community, and I am afraid that through his repeated actions over and over and over again that has caused that balance to shift traumatically. If he needs help, he'll have to receive that help at the penitentiary. At this point he needs to get himself under control. He's too scary at this point to be on the streets of this city and community. I am imposing a sentence of eight years in the South Dakota State Penitentiary.

These concerns continued after sentencing. The trial court's judgment of conviction recommended that the Parole Board obtain a psychosexual evaluation and have Beckley placed in a sex offender group. This record demonstrates that Beckley's

-13-

psychosexual state was the major motivating factor and weighed heavily in the trial court's formulation of its sentence.

[¶24.] Notwithstanding this focus, the court denied the continuance twice stating its belief that it had adequate information on this subject. The record does not support the trial court's conclusion. The information in the presentence report (or otherwise before the Court) was wholly lacking concerning the psychological aspects of Beckley's sexual proclivities, the area of main concern to the trial court in determining punishment. More importantly, the denial of Beckley's requests for continuance to present highly relevant and potentially mitigating evidence violated SDCL 23A-27-1. That statute provides in relevant part:

> At such hearing, the court shall allow the defense counsel an opportunity to speak on behalf of the defendant and shall address the defendant personally and ask him if he wishes to make a statement in his own behalf and to present any information in mitigation of punishment.

[¶25.] Although we are not suggesting that the failure to include particular information in a presentence investigation is a matter that is generally appealable, in this case we consider that fact because it was the sole basis for the trial court's denial of the continuance and Beckley had a right to present that information to the sentencing court. "Fundamental principles of procedural fairness apply with no less force at the penalty phase of a criminal trial than they do in the guilt-determining phase of a criminal trial." State v. Phelps, 297 NW2d 769, 776 (ND 1980) (citing Presnell v. Georgia, 439 US 19, 99 SCt 235, 58 LEd2d 207 (1978)).[4]

---

4.    It is important to note that this is not a case where a defendant sought to contest the factual allegations contained in a presentence report. *See* Hansen v. Kjellsen, 2002 SD 1, ¶11, 638 NW2d 548, 552 (recognizing "the defense has a right to comment on the presentence report and may introduce evidence."); State v. Jensen, 1998 SD 52, ¶58, 579 NW2d 613, 623 ("[D]ue process

[¶26.]     Unable to procure the mitigating psychological evaluation allowed under SDCL 23A-27-1, counsel proceeded to the request for a continuance. This was denied by the trial court without an analysis of the *In re J.G.R.* factors. *See supra* ¶21. We have also been pointed to no evidence in the record that a continuance would have been prejudicial to the State or that it was motivated by bad faith or dilatory tactics.[5] Yet, there is evidence that such an evaluation would have provided the trial court with relevant psychological information concerning Beckley's mental state and sexual proclivities.[6] The trial court recognized that fact,

---

requires a defendant who contests the accuracy of *factual* information relied upon by a sentencing court be given an opportunity to rebut or explain that information."). Rather, Beckley sought to supplement that report with relevant evidence relating to the topic of most concern to the trial court- information that was otherwise absent.

5.     While there is some contention in the brief that the motion for a continuance was not filed as quickly as it could have been because of informal discussions occurring between the State and Beckley's trial counsel relating to further psychological testing, that evidence is not contained in the record and we do not consider it here.

6.     Even if the dissent were correct in noting that the trial court "was well informed as to the detail and extent of Beckley's perverse conduct," *infra* ¶36, that is not the question. The question is whether Beckley was denied the statutory right to present mitigating evidence relating to that conduct. Moreover, that right was not satisfied because "both Beckley and defense counsel had an opportunity to speak at the . . . sentencing hearing." *See infra* ¶39. Neither Beckley nor his counsel was competent to provide a psychological evaluation, and without that type of evaluation we can only speculate whether the trial court's ultimate sentence would have been different. Further, the dissent's assertion that our decision here will discourage trial courts from ordering presentence reports in the future is untenable. A defendant's statutory right to present mitigation evidence is not dependent upon a trial court's decision to order a presentence report.

recommending such an evaluation *after* Beckley was incarcerated. [7]

[¶27.]     On this record, the trial court abused its discretion in denying the continuance to allow Beckley to obtain the psychological evaluation to mitigate the evidence relating to his sexual misconduct. The trial court failed to consider the relevant continuance factors, its sole reason for denying the continuance was not supported, and its denial of Beckley's attempt to present this mitigation witness violated the statutory right to present mitigation evidence. *Compare, State v. Milk*, 2000 SD 28, ¶23, 607 NW2d 14, 21 (foreclosing the defendant from seeking to re-open the sentencing phase to allow psychological evidence because he did not attempt to call the witness or seek a continuance of the sentencing hearing). Therefore, we reverse and remand for resentencing after Beckley has been provided an opportunity to obtain a psychological evaluation.

[¶28.]     Affirmed in part, reversed in part and remanded.

[¶29.]     SABERS, KONENKAMP and MEIERHENRY, Justices, concur.

[¶30.]     GILBERTSON, Chief Justice, concurs in part and dissents in part.

---

7.     This case is distinguishable from State v. Jensen, 1998 SD 52, ¶57, 579 NW2d at 623 (holding decision denying expert witness testimony during sentencing concerning impact of prison term on juvenile offender was not a denial of due process) and State v. Iron Necklace, 430 NW2d 66, 81-82 (SD 1988) (holding trial court did not abuse its discretion in denying a continuance to allow defendant to present mitigating evidence in the form of letters and affidavits from family members when they were not requested until the day before the hearing). Beckley's motion was filed six days prior to the sentencing hearing and one day after learning that his expert could not complete the evaluation in time. Finally, the purpose of the requested continuance was to obtain mitigating evidence concerning conduct that was not the subject of the guilty plea but nevertheless was the most aggravating sentencing factor in the view of the court and was an area virtually untouched in the presentence report.

GILBERTSON, Chief Justice (concurring in part and dissenting in part).

[¶31.]     While I concur with the Court's holding on Issue 1, I write to dissent with its holding on Issue 2 – that the circuit court abused its discretion by refusing to continue the sentencing hearing to allow Beckley to obtain a psychological evaluation pertaining to his sexual proclivity. The Court's decision is based on its position that the presentence report was incomplete and that the circuit court had inadequate information to pass sentence without the psychological evaluation that Beckley argues would have provided the justification for mitigating his sentence. I cannot agree.

[¶32.]     It is the duty of a sentencing court to insure that the punishment "fit[s] the offender and not merely the crime." State v. Anderson, 1996 SD 46, ¶32, 546 NW2d 395, 403 (quoting Williams v. New York, 337 US 241, 247, 69 SCt 1079, 1083, 93 LEd 1337, 1342 (1949)). In order to impose an appropriate sentence, the sentencing court must "acquire a thorough acquaintance with the character and history of [the defendant.]" State v. Blair, 2006 SD 75, ¶27, 721 NW2d 55, 63 (citing State v. Bonner, 1998 SD 30, ¶19, 577 NW2d 575, 580 (quoting State v. Chase in Winter, 534 NW2d 350, 354-55 (SD 1995))). Appropriate factors to consider when determining sentence include, "the defendant's 'general moral character, mentality, habits, social environment, tendencies, age, aversion or inclination to commit crime, life, family, occupation, and previous criminal record.'" Id. (citing Bonner, 1998 SD 30, ¶19, 577 NW2d at 580 (quoting Chase in Winter, 534 NW2d at 354-55)). "This consideration may include . . . 'uncharged conduct.'"[8]

---

8.     While the sentencing court has "wide latitude" in determining an appropriate sentence, see McKinney II, 2005 SD 74, ¶17, 699 NW2d at 466 (citing State v. Milk, 2000 SD 28, ¶10, 607 NW2d 14, 17 (citation omitted)), in order to

*Id.* ¶27, 721 NW2d at 64 (quoting State v. McKinney, 2005 SD 74, ¶17, 699 NW2d 460, 466 (*McKinney II*) (citing United States v. Schaefer, 291 F3d 932, 944 (7thCir 2002))).  However, "[t]he primary criterion in sentencing is good order and protection of the public and society, and all other factors must be subservient to that end."  *Anderson*, 1996 SD 46, ¶31, 546 NW2d at 403 (citations omitted).

[¶33.]       Whether, a presentencing investigation and report is ordered is a discretionary matter.  SDCL 23A-27-5.[9]  When there is sufficient evidence in the record, enabling the meaningful exercise of sentencing discretion, the presentence report is superfluous.  *Id*.  *See supra* note 9 (setting out that when there is sufficient evidence in the record on which to base a sentence, a sentencing court need only then state said basis for the record).

___

consider uncharged conduct, the State must prove such conduct by a preponderance of the evidence.  *Id*. ¶18, 699 NW2d at 466 (citations omitted).  Although Beckley argues that the circuit court did not adequately consider the psychological underpinnings of his perverse sexual behavior, he did not object to the sentencing court's consideration of this uncharged conduct nor does he on appeal claim error in the sentencing court's consideration of same.

9.    SDCL 23A-27-5 provides:

*A presentence investigation may be ordered in the discretion of a court.*  The court services officer of a court shall make a presentence investigation and report to the court before the imposition of sentence or the granting of probation unless, with the permission of the court, the defendant waives a presentence investigation and report, *or the court finds there is in the record information sufficient to enable the meaningful exercise of sentencing discretion, and the court explains this finding on the record.*

The report shall not be submitted to a court or its contents disclosed to anyone unless the defendant has pleaded guilty or nolo contendere or has been found guilty, except that a judge may, with the written consent of the defendant, inspect a presentence report at any time.

(Emphasis added).

[¶34.] In this case, the sentencing court ordered a sentencing hearing that was held on March 8, 2006. In advance of this hearing, the court reviewed a presentence report. After reviewing the record, it is apparent, as the court pointed out at the hearing, the report is "very complete." It contains voluminous information about Beckley including family and marital history, his level of education, military service, employment and financial and medical records as well as information about his religious background. In addition, the report also noted that Beckley had had periods of depression and that he had been sexually abused.[10] Further, the report discussed in detail Beckley's problems with drugs and alcohol. Nevertheless, the Court concludes that since the sentencing court emphasized its concern over Beckley's history of perverse sexual behavior when imposing sentence, Beckley was entitled to a continuance in order to include a psychological evaluation aimed at explaining his sexual proclivity, thereby providing a basis to mitigate his sentence.

[¶35.] Despite the fact that Beckley offered no explanation as to why the evaluation had not been completed in advance of the March 8, 2005 sentencing hearing,[11] the Court bases its conclusion that Beckley was entitled to the continuance on an interpretation of SDCL 23A-27-6 that it believes required the presentence report to include more findings about Beckley's sexual proclivity. SDCL 23A-27-6 provides:

---

10. The report indicates that Beckley received a substantial monetary award as a participant in a class-action law suit seeking damages for victims of sexual abuse that occurred in a group home operated by the State of Washington.

11. The fact that Beckley's expert was unable to attend the sentencing hearing does not constitute a reason for why the psychological evaluation had not been completed by that late date.

> The report of a presentence investigation shall contain any prior criminal record of the defendant and such information about his characteristics, his financial condition, and the circumstances affecting his behavior **as may be helpful** *in imposing sentence* or in granting probation or in the correctional treatment of the defendant, *and such other information as may be required by the court.*

(Emphasis added). The only requirement under this statute is that the presentence report "shall contain any prior criminal record." After ordering a presentence investigation and report, *the sentencing court then has the discretion* to direct that it include whatever other information "as may be helpful" and "required" in imposing sentence.

[¶36.]     In addition to the detailed presentence report in this case, the record indicates that the sentencing court was well informed as to the detail and extent of Beckley's perverse conduct. As reflected in the Court's opinion, *supra* note 10, the sentencing court went to great lengths to establish for the record the basis for its sentence.

[¶37.]     The sentencing court discussed at length how Beckley had pulled over a car with two young girls on April 5, 2005, under the false pretence of working undercover for the City of Sioux Falls. The court discussed how he attempted to videotape the girls. Later that day, Beckley was arrested for methamphetamine possession at the Best Buy in Sioux Falls after police had been summoned there to investigate his strange behavior, which included videotaping other young women. There, Beckley was found in possession of the video camera and knives. The camera's videotape contained footage of the rear ends of young women at Best Buy. The videotape also included footage of Beckley engaged in sex acts. After being released on bail, Beckley was again taken into custody on May 10, 2005, when

police were summoned to the driver's licensing office in Sioux Falls after Beckley was observed photographing another young girl. Finally, on September 13, 2005, Beckley was arrested for window peeking and attempting to force his way into a women's dormitory on the campus of a Sioux Falls University. During this episode, Beckley was wearing only underwear and a tank top.

[¶38.]    Despite the obvious and extensive justification for the sentence handed down by the court, this Court now determines that Beckley was entitled to a continuance on the chance that a psychological evaluation of his perverse sexual behavior would have rendered some finding that the sentencing court would have justified as a reason to impose a lesser sentence. This defies reason. The record is replete with evidentiary support for the sentencing court's determination that Beckley's behavior posed a clear and present danger to the community, thereby justifying the lengthy sentence that he received.

[¶39.]    The Court also concludes that the sentencing court's refusal to grant a continuance violated SDCL 23A-27-1.[12] However, the Court is mistaken in this assessment as well since, as required by that statute, both Beckley and defense

---

12.    SDCL 23A-27-1 provides in pertinent part:

> Sentences shall be imposed without unreasonable delay, but not within forty-eight hours after determination of guilt. A defendant may waive the forty-eight hour delay. Before imposing a sentence, a court *may order a hearing in mitigation or aggravation of punishment.* At such hearing, the court shall allow the defense counsel an opportunity to speak on behalf of the defendant and shall address the defendant personally and ask him if he wishes to make a statement in his own behalf and to present any information in mitigation of punishment.

(Emphasis added).

counsel had an opportunity to speak at the *discretionary* sentencing hearing. *See supra* note 12 (SDCL 23A-27-1). While under the statute Beckley was entitled "to present any information in mitigation of punishment," *see supra* note 12 (SDCL 23A-27-1), the only thing that the Court can point to that Beckley was not able to present was the psychological evaluation. Again, it is beyond reason to conclude that the evaluation would have contained any finding for which the sentencing court would have justified imposition of a shorter sentence.

[¶40.] There was support in the record for the sentence imposed by the court; the presentence report notwithstanding. The Court's holding imposes mandatory content in a discretionary report. The result of this holding will be that sentencing courts will forego ordering presentence reports in favor of determination based on the trial court record in order to avoid the threat of reversal established by this Court today.