#27454-a-JMK

**2016 S.D. 16**

IN THE SUPREME COURT
OF THE
STATE OF SOUTH DAKOTA

\* \* \* \*

HERMAN KLEINSASSER,                     Petitioner and Appellant,

    v.

DOUG WEBER, Warden,
South Dakota State Penitentiary,        Respondent and Appellee.

\* \* \* \*

APPEAL FROM THE CIRCUIT COURT OF
THE SIXTH JUDICIAL CIRCUIT
SULLY COUNTY, SOUTH DAKOTA

\* \* \* \*

THE HONORABLE KATHLEEN F. TRANDAHL
Judge

\* \* \* \*

AL ARENDT
Pierre, South Dakota                    Attorney for petitioner
                                      and appellant.

MARTY J. JACKLEY
Attorney General

CRAIG M. EICHSTADT
Assistant Attorney General
Pierre, South Dakota                    Attorneys for respondent
                                      and appellee.

\* \* \* \*

CONSIDERED ON BRIEFS
ON JANUARY 11, 2016
OPINION FILED **03/02/16**

#27454

KERN, Justice

[¶1.] Herman Kleinsasser, Jr., (Kleinsasser) pleaded guilty to first-degree manslaughter on May 27, 2009. He was sentenced on August 31, 2009, to 80 years in the South Dakota State Penitentiary and ordered to reimburse Sully County for costs of prosecution in the amount of $88,611.79. Kleinsasser filed a petition for a writ of habeas corpus raising six issues for review. After a two-day evidentiary trial, the circuit court denied his claims. Having received a certificate of probable cause from the circuit court, Kleinsasser presents three issues on appeal. First, Kleinsasser alleges that his trial counsel was ineffective. Second, he contends that the State of South Dakota violated the terms of the plea-bargain agreement. Third, Kleinsasser alleges certain errors occurred during his change-of-plea and sentencing hearings. We affirm.

## BACKGROUND

[¶2.] On the night of January 28, 2009, Sharon Kleinsasser was in the kitchen of her home. Her husband, Herman Kleinsasser, Jr., entered the kitchen and shot her twice with a 12-gauge, semi-automatic shotgun, once near her shoulder and once in the head, killing her. Kleinsasser then shot himself once in the head. This third shot hit the ceiling, causing the kitchen lights to go out. All six of the Kleinsassers' children, ranging in age from 1 to 15 years, were at home during the shooting. Their 11-year-old daughter, S.K., testified before a grand jury that she saw her mother lying in a pool of blood after the first shot was fired, while the lights were still on. She also testified that she heard her father say, while standing over her mother, "I'll do to you what you've been doing to me." S.K. heard

-1-

a second shot as she ran out of the house. At least four of the children saw their mother's dead body lying in a pool of blood after the shooting. One of the older boys took the gun away, threw it outside, and called 911 for help.

[¶3.] Upon arrival, law enforcement arrested Kleinsasser and took him to the hospital in Pierre to receive medical care for his gunshot wound. A sample of Kleinsasser's blood was taken at the hospital and revealed alcohol, Alprazolam, and Codeine in his system at the time of the shooting. He was transported to Rapid City Regional Hospital to receive additional care. In February 2009, Kleinsasser was released from the hospital to the county jail. He was indicted for first-degree murder, second-degree murder, and first-degree manslaughter. SDCL 22-16-4(1), -7, -15(3).

[¶4.] Attorney Wade Reimers was appointed to represent Kleinsasser and filed motions in support of his defense. On February 11, 2009, Reimers filed a motion for discovery and for appointment of an investigator. The court granted both motions and appointed Charles Draper, a former FBI agent, to serve as Reimers's investigator. On February 24, 2009, Reimers filed a motion for appointment of a psychiatric expert. Dr. Stephen P. Manlove was appointed to assess Kleinsasser's sanity at the time of the offense and his competency for trial. Reimers filed other motions, including requests for a gag order, for pretrial designation of evidence, and to extend deadlines.

[¶5.] Reimers and Kleinsasser met and discussed potential defenses, the discovery information provided by the State, the mechanics of a jury trial, and potential plea-bargain agreements. The State extended a plea-bargain offer on

March 5, 2009. In April 2009, Dr. Manlove issued his report. In formulating his opinion, Dr. Manlove reviewed the investigative report, charging document, and Kleinsasser's medical records. He interviewed Kleinsasser on three occasions and performed a mental-status examination and competency assessment. Based upon this information, Dr. Manlove rendered three opinions. He determined Kleinsasser was sane at the time of the shooting and that he was competent both to understand the nature of the proceedings against him and to aid his attorney in his own defense.

[¶6.]        Kleinsasser accepted the State's offer and signed a written plea agreement on May 8, 2009. In exchange for Kleinsasser's plea of guilty to first-degree manslaughter, the State agreed to dismiss the first- and second-degree murder charges and to recommend a sentencing cap of 50 to 80 years. On May 27, 2009, an arraignment and change-of-plea hearing was held before the Honorable John L. Brown. Both parties signed the original plea agreement and presented it to the court. The court advised Kleinsasser of his constitutional and statutory rights. Kleinsasser pleaded guilty to first-degree manslaughter. He signed a written statement setting forth the factual basis for his plea. The court ordered a presentence investigation and scheduled a sentencing hearing.

[¶7.]        After the entry of his plea, Kleinsasser's family retained Dr. Renner to evaluate Kleinsasser. Dr. Renner issued his report on August 25, 2009. Dr. Renner concluded "within a reasonable degree of medical certainty, that Mr. Kleinsasser had significantly impaired judgment from the ingestion of alcohol, Alprazolam, and Tylenol #3 during the time prior to the event coupled with his increasingly

heightened state of anxiety and worsening depression." He went on to opine "that Mr. Kleinsasser likely had a marked distortion in perceiving reality at the time of the shooting." The report was given to Reimers prior to sentencing.

[¶8.] The sentencing hearing was held on August 31, 2009, in the Sully County Courthouse before the Honorable Lori S. Wilbur. Immediately prior to the hearing, Reimers made a motion in chambers for a continuance, which was denied. The court advised Kleinsasser that the maximum sentence for first-degree manslaughter "could be up to life in the South Dakota Penitentiary and a $50,000 fine, or both of those things, plus restitution." Kleinsasser confirmed his understanding of the potential maximum sentence and the terms of the plea-bargain agreement. Kleinsasser did not move to withdraw his plea.

[¶9.] Reimers urged the court to consider a sentence at the "lower end of the recommendation" and discussed parole eligibility upon receipt of a 50-year sentence. The State argued for a sentence "at the maximum end of our agreed-upon window and that being the 80 years." The State also presented a spreadsheet of expenses and requested reimbursement for Sully County's costs of prosecution by way of "a lien against the defendant." When asked by the court, Reimers stated his client had no objection to the requested costs. The circuit court imposed an 80-year sentence and ordered Kleinsasser to reimburse Sully County for costs of prosecution in the amount of $88,611.79. In September 2009, an amended judgment of conviction was filed.[1] The amended judgment provided that "the Defendant shall be liable to Sully

---

1. Kleinsasser filed a direct appeal of his conviction. Upon review, we issued an order of summary affirmance.

County for *restitution* in the amount of . . . ([$]88,611.79), and any subsequent court appointed attorney fees incurred, as well as any additional medical or jail costs. A statutory lien for said *restitution* exists against Defendant's property." (Emphasis added.)

[¶10.]     In April 2012, Kleinsasser filed a petition for writ of habeas corpus alleging ineffective assistance of counsel. In January 2013, he filed a supplemental petition asserting the circuit court failed to canvass him regarding his rights under *Boykin v. Alabama*, 395 U.S. 238, 89 S. Ct. 1709, 23 L. Ed. 2d 274 (1969), at sentencing and failed to advise him that he could be required to pay restitution. Kleinsasser also claimed that the State violated the plea agreement by requesting a sentence of 80 years and "restitution over and above fines, court costs, and court attorney fees."

[¶11.]     A two-day court trial was held on October 21–22, 2013, on Kleinsasser's habeas claims. In addition to his own testimony, Kleinsasser presented expert testimony from attorney Steven Haugaard. The State presented expert testimony from attorney Max Gors and called Sheriff Bill Stahl, Reimers, and Special Agent Guy Di Benedetto to testify. Upon consideration of the parties' posthearing briefs, the circuit court issued a memorandum decision denying Kleinsasser's petition, followed by extensive findings of fact and conclusions of law.

[¶12.]     Kleinsasser raises three issues on appeal:

1.     Whether Kleinsasser's counsel was ineffective.
2.     Whether the State violated the plea-bargain agreement.
3.     Whether the sentencing court erred by failing to advise Kleinsasser of his *Boykin* rights.

**STANDARD OF REVIEW**

[¶13.] "Our review of habeas corpus proceedings is limited because it 'is a collateral attack on a final judgment.'" *Vanden Hoek v. Weber*, 2006 S.D. 102, ¶ 8, 724 N.W.2d 858, 861 (quoting *Crutchfield v. Weber*, 2005 S.D. 62, ¶ 8, 697 N.W.2d 756, 759). "Accordingly, 'habeas corpus can be used only to review (1) whether the court has jurisdiction of the crime and the person of the defendant; (2) whether the sentence was authorized by law; and (3) in certain cases whether an incarcerated defendant has been deprived of basic constitutional rights.'" *Oleson v. Young*, 2015 S.D. 73, ¶ 5, 869 N.W.2d 452, 455 (quoting *McDonough v. Weber*, 2015 S.D. 1, ¶ 15, 859 N.W.2d 26, 33). "The petitioner must 'prove he is entitled to relief by a preponderance of the evidence.'" *Id.* (quoting *McDonough*, 2015 S.D. 1, ¶ 15, 859 N.W.2d at 34). "'Preponderance of the evidence' is defined as 'the greater weight of evidence.'" *Id.* (quoting *Pieper v. Pieper*, 2013 S.D. 98, ¶ 22, 841 N.W.2d 781, 787).

**ANALYSIS**

*1.     Whether Kleinsasser's counsel was ineffective.*

[¶14.] Kleinsasser alleges Reimers's pretrial preparations were deficient in several respects. He also asserts that Reimers struck a plea bargain too quickly and while Kleinsasser was still under the influence of medications. Steven Haugaard, Kleinsasser's expert, testified that this was his "main complaint" about Reimers's performance. Kleinsasser contends that he wanted to withdraw his plea and proceed to trial. He claims that he directed Reimers to request a continuance of his sentencing hearing so that he could withdraw his plea. Kleinsasser also faults

Reimers for failing to object to the State's recommendations at the sentencing hearing as he believed they violated the terms of the plea agreement.

[¶15.] Kleinsasser further alleges that Reimers failed to file motions, properly investigate his case, and develop reasonable defenses on his behalf. Specifically, Kleinsasser claims Reimers ignored Dr. Renner's report. He also contends that Reimers failed to ask Dr. Manlove to evaluate the interaction of the prescription drugs and alcohol in his system and their effect on his judgment at the time of the shooting. According to Kleinsasser, Reimers failed to reconstruct the crime scene and interview fact witnesses. The State argues Kleinsasser's allegations are meritless, do not show constitutionally deficient performance, and fail to establish prejudice.

[¶16.] "To prevail on a claim of ineffective assistance of counsel, a defendant must show that his counsel provided ineffective assistance and that he was prejudiced as a result." *State v. Craig*, 2014 S.D. 43, ¶ 38, 850 N.W.2d 828, 838 (quoting *Fast Horse v. Weber*, 2013 S.D. 74, ¶ 14, 838 N.W.2d 831, 836).

> [W]hether a defendant has received ineffective assistance of counsel is essentially a mixed question of law and fact. In the absence of a clearly erroneous determination by the circuit court, we must defer to its findings on such primary facts regarding what defense counsel did or did not do in preparation for trial and in his presentation of the defense at trial. This [C]ourt, however, may substitute its own judgment for that of the circuit court as to whether defense counsel's actions or inaction constituted ineffective assistance of counsel.

*Hofman v. Weber*, 2002 S.D. 11, ¶ 8, 639 N.W.2d 523, 526 (quoting *Weddell v. Weber*, 2000 S.D. 3, ¶ 27, 604 N.W.2d 274, 281-82).

[¶17.] We apply the well-established, two-part test, set forth in *Strickland v. Washington*, 466 U.S. 668, 687, 104 S. Ct. 2052, 2064, 80 L. Ed. 2d 674 (1984), to determine whether a defendant received the effective assistance of counsel. The first prong requires that the defendant establish that counsel's representation fell below an objective standard of reasonableness. *Id.* at 688, 104 S. Ct. at 2065. "There is a strong presumption that counsel's performance falls within the wide range of professional assistance and the reasonableness of counsel's performance is to be evaluated from counsel's perspective at the time of the alleged error and in light of all circumstances." *State v. Thomas*, 2011 S.D. 15, ¶ 21, 796 N.W.2d 706, 713 (quoting *Steichen v. Weber*, 2009 S.D. 4, ¶ 25, 760 N.W.2d 381, 392-93). The second prong of the *Strickland* test requires a showing of prejudice as a result of counsel's deficient performance. 466 U.S. at 687, 104 S. Ct. at 2064. "[T]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Owens v. Russell*, 2007 S.D. 3, ¶ 9, 726 N.W.2d 610, 615 (quoting *Strickland*, 466 U.S. at 694, 104 S. Ct. at 2068). Additionally, Kleinsasser bears an "increased burden to show ineffective assistance of counsel" as the case was resolved by a plea-bargain agreement. *Id.* ¶ 10, 726 N.W.2d at 616 (quoting *Coon v. Weber*, 2002 S.D. 48, ¶ 12, 644 N.W.2d 638, 643). Kleinsasser must establish "gross error on the part of counsel in recommending that he plead guilty." *Id.* (quoting *Coon*, 2002 S.D. 48, ¶ 12, 644 N.W.2d at 643).

[¶18.]     The circuit court first addressed Kleinsasser's allegations surrounding the plea-bargain agreement. Kleinsasser alleged that the agreement was struck on March 5, 2009, when he was still impaired from his injuries and the medications he was taking. In support of his argument, he relies upon a note in Reimers's file dated March 5, 2009, indicating "manslaughter 50-80" as evidence that a plea deal was reached on that date. Upon consideration of both Reimers's and Kleinsasser's testimony, the circuit court found the plea discussions *commenced* on March 5, 2009, and "there was no deal struck on this date." (Emphasis added.) The court found that Kleinsasser and Reimers signed the plea agreement on May 8, 2009, after Dr. Manlove issued his report. The court also found that Kleinsasser was vocal about his desire to avoid a trial, take advantage of the plea agreement, and "save his children from going through trial." He made similar statements to his attorney and Sheriff Stahl.

[¶19.]     Kleinsasser must show that absent Reimers's alleged errors, he would have rejected the plea agreement and insisted on going to trial. *Id.* ¶ 21, 726 N.W.2d at 618. From our review of the record, other than his own testimony, which the court discounted as self-serving and not credible, Kleinsasser has produced no evidence that he desired to proceed to trial. Rather, all of the evidence establishes that he intended to enter a plea and did so voluntarily and knowingly. Kleinsasser signed not one, but two copies of the proposed plea agreement—on May 8, 2009, and another copy on May 27, 2009. Immediately prior to the arraignment, Reimers deposed Kleinsasser in the presence of a court reporter to ensure that his

decision was voluntary. Upon cross-examination at the habeas proceeding,

Kleinsasser admitted that the following colloquy occurred during the deposition:

> **Mr. Reimers**: Okay. Did we go over the signed plea agreement together?
>
> **Defendant**: Yes.
>
> **Mr. Reimers**: And did I explain what each part of it meant?
>
> **Defendant**: Yes.
>
> **Mr. Reimers**: Do you think you understand that?
>
> **Defendant**: Yes.
>
> **Mr. Reimers**: And did I make you sign the plea agreement?
>
> **Defendant**: No.
>
> **Mr. Reimers**: Did you want to sign the plea agreement?
>
> **Defendant**: Yes.
>
> **Mr. Reimers**: You did that voluntarily?
>
> **Defendant**: Yes.
>
> **Mr. Reimers**: Are you pleading guilty to manslaughter voluntarily?
>
> **Defendant**: Yes.
>
> **Mr. Reimers**: Did I force you to decide to plead guilty to that charge?
>
> **Defendant**: No.

At the May 27, 2009 arraignment and change-of-plea hearing, the court discussed

with Kleinsasser the terms of the plea agreement and ensured he understood the

agreement:

> **The court**: Now, pursuant to the plea agreement, it's my understanding that the State is going to recommend a cap in this matter of from 50 to 80 years in the State Penitentiary. You understand, Mr. Kleinsasser, that the [c]ourt is not bound by the State's recommendation in that regard; and the [c]ourt can sentence you up to life in prison. Do you understand that?
>
> **Defendant**: Yes, Your Honor.

After advising Kleinsasser of his *Boykin* rights, the court accepted his plea, finding it was knowingly and voluntarily made.

[¶20.]    Kleinsasser also contends that he wanted to continue his sentencing hearing so that he could withdraw his plea. Immediately prior to the sentencing hearing, Reimers, at Kleinsasser's request, made a motion in chambers for a continuance to "explore more of Dr. Renner's findings . . . along the lines of mitigation." Kleinsasser explained to the court that he did not want a continuance in order to pursue a defense to the charge of manslaughter; rather, he wanted the court to consider Dr. Renner's report in mitigation. After agreeing to admit and consider Dr. Renner's report, the circuit court denied the motion. At the sentencing hearing, the court noted that it had considered the findings in Dr. Renner's report.

[¶21.]    It is clear from a review of the record that Kleinsasser was given multiple opportunities to withdraw his plea and never made a request to do so. Kleinsasser's habeas counsel acknowledged that "the issue of whether Kleinsasser wanted to withdraw his plea at the time of sentencing" was one of credibility. The circuit court found Kleinsasser's testimony on this point "not credible." Such credibility determinations are properly left to the habeas court. We will not substitute our judgment for that of the judge who saw the demeanor and heard the testimony of the witnesses. *Fast Horse*, 2013 S.D. 74, ¶ 29, 838 N.W.2d at 840.

[¶22.]    We next address the allegations that Reimers failed to file motions, properly investigate Kleinsasser's case, and develop reasonable defenses. As an initial matter, Kleinsasser's allegation that "Reimers failed to file a single motion for suppression, discovery, or any motions practice," other than a motion for

psychiatric opinion, is at best factually inaccurate. As previously discussed, Reimers filed six motions between February and March 2009. Further, Kleinsasser has failed to identify what additional motions Reimers should have filed and how any evidence discovered would have led to a recommendation that Kleinsasser reject the plea agreement and proceed to trial.

[¶23.] Kleinsasser also alleges that Reimers failed to adequately investigate his insanity defense. To succeed on this claim, Kleinsasser must establish that Reimers's alleged failure "caused him to plead guilty rather than go to trial and that the discovery of [new] evidence would have led counsel to change the recommendation as to the plea." *Brakeall v. Weber*, 2003 S.D. 90, ¶ 17, 668 N.W.2d 79, 85. Although Dr. Manlove was in possession of the toxicology report and Kleinsasser's medical records, he did not discuss the interaction of the alcohol and prescription drugs in Kleinsasser's system at the time of the shooting.[2] Reimers testified that at Kleinsasser's direction, he contacted Dr. Manlove by email and inquired, "[I]f [Kleinsasser] had taken [acetaminophen-Codeine #3] for pain on the 28th, in addition to the .28 bac . . . would that affect your opinions at all?" Dr. Manlove indicated that this information would not change his report. Although Reimers did not specifically ask about the effect of Alprazolam, Dr. Manlove had the records showing the presence of the drug in Kleinsasser's system. Kleinsasser has

---

2. Dr. Manlove stated in his report that Kleinsasser "had struggled with depression and was intoxicated but [Dr. Manlove found] no evidence that he [sic] either of these issues rendered him unable to know right from wrong at the time of the alleged incident."

provided no evidence to support his argument that Dr. Manlove failed to consider the issue or that if he did the information would have changed his opinion.

[¶24.] Likewise, Kleinsasser has failed to produce any evidence that Reimers erred in failing to fully utilize Dr. Renner's report, which concluded that Kleinsasser's judgment was significantly impaired at the time of the killing. The crimes of first- and second-degree murder are specific-intent offenses. The crime of first-degree manslaughter is a general-intent crime. *State v. Mulligan*, 2007 S.D. 67, ¶ 9, 736 N.W.2d 808, 813. To prove the general intent necessary for the manslaughter charge, the State would have been required to prove Kleinsasser had the intent to do the physical act or recklessly committed "the physical act which the crime requires[.]" *Id.* (quoting *State v. Schouten*, 2005 S.D. 122, ¶ 13, 707 N.W.2d 820, 824). The circuit court found that there was "sufficient evidence to find that Kleinsasser intended to fire the shotgun that killed his wife." Testimony of impaired judgment from anxiety and depression would not have negated the element of general intent for the manslaughter charge. It is well-established that "[a] defense of diminished capacity is relevant to a specific intent crime, but not to a general intent crime." *Schouten*, 2005 S.D. 122, ¶ 18, 707 N.W.2d at 825. Likewise, "voluntary intoxication is not a defense to [a] general intent crime[]." *State v. Primeaux*, 328 N.W.2d 256, 259 (S.D. 1982). At Kleinsasser's request, Reimers did present Dr. Renner's report at sentencing as mitigation evidence.

[¶25.] While it is true that Reimers did not reconstruct the crime scene, the circuit court found that the grand-jury testimony of one of the children was "consistent with the physical evidence obtained from the crime scene." Based upon

such consistencies, the circuit court found "no evidence . . . that required trial counsel to conduct further investigation." Even with the benefit of hindsight, Kleinsasser was unable to present any theory or evidence that someone else could have committed the offense or that he acted in self-defense.

[¶26.]     Kleinsasser also contends Reimers's representation was deficient as he failed to have the children interviewed. But, the circuit court found that "Reimers did attempt to have the [Kleinsasser] children interviewed, and they refused to talk to him." Kleinsasser was unable to suggest to the court anything Reimers could have done to force the children to discuss the details of their mother's death with his investigator. Reimers's assistance was not deficient for failing to obtain interviews with the children. *See Fast Horse v. Weber*, 1999 S.D. 97, ¶ 15, 598 N.W.2d 539, 543.

[¶27.]     Kleinsasser bears a heavy burden to establish that Reimers made a gross error in recommending the plea agreement and that but for these alleged errors, he would have insisted on going to trial. The evidence against Kleinsasser was overwhelming. He shot his wife twice at close range. S.K. reported seeing Kleinsasser standing over her mother after the first shot was fired and hearing him say, "I'll do to you what you've been doing to me." In light of the strength of the State's case, Kleinsasser ran a significant risk of being convicted of either first- or second-degree murder, each of which carries a mandatory life sentence. Both Reimers and Max Gors testified that the photos of the crime were "extremely gruesome" and that it was unlikely that a "jury would acquit [Kleinsasser] after seeing the photographs and hearing the evidence." Kleinsasser also would have

faced the likely admission of other-acts evidence pursuant to SDCL 19-19-404 as he had previously been convicted of simple assault for breaking Sharon's wrist.

[¶28.] For Kleinsasser to show that he was prejudiced by Reimers's failure to investigate, he must establish that new evidence was available that if considered, would likely have led to a different outcome, namely an acquittal or conviction of something less than first-degree manslaughter. *See Brakeall*, 2003 S.D. 90, ¶ 17, 668 N.W.2d at 85. Kleinsasser has failed to produce any such evidence. The circuit court found that Kleinsasser failed to prove Reimers's performance was deficient or that Kleinsasser was prejudiced. The findings of the habeas court are supported by the record and are not clearly erroneous.

### 2. *Whether the State violated the plea-bargain agreement.*

[¶29.] Kleinsasser contends that the State violated the plea-bargain agreement in two ways. First, he alleges the State violated the agreement when it requested a sentence of 80 years "and not 50 to 80 years." Second, he alleges that the State "presented $81,000 in restitution claims" even though "he was not asked to make restitution in the plea bargain agreement." In response, the State submits it did not argue for a more severe sentence than agreed upon and that the sum requested was "for the county's prosecution costs" and not restitution.

[¶30.] Paragraph eight of the plea-bargain agreement provided, "The [S]tate will recommend a sentencing cap of fifty (50) to eighty (80) years. This will be a non-binding recommendation pursuant to SDCL 23A-7-8(2). The court would be free to accept or reject it." Paragraph nine provided that "[b]oth the State and the Defendant are free to call witnesses on their behalf and make arguments at the

time of sentencing." "Generally, plea agreements are contractual in nature and are governed by ordinary contract principles." *State v. Waldner*, 2005 S.D. 11, ¶ 8, 692 N.W.2d 187, 190 (quoting *State v. Stevenson*, 2002 S.D. 120, ¶ 9, 652 N.W.2d 735, 738). When examining a contract, we give words their "plain and ordinary meaning." *Elrod v. Gen. Cas. Co. of Wis.*, 1997 S.D. 90, ¶ 15, 566 N.W.2d 482, 486.

[¶31.]     In support of his argument that the State violated the agreement, Kleinsasser relies on *Vanden Hoek*, 2006 S.D. 102, 724 N.W.2d 858. In *Vanden Hoek*, defendant, his counsel, and the State agreed that defendant "would plead guilty to kidnapping and second degree rape" in exchange for the State's recommendation of "50 years for the kidnapping and 25 years for the rape, with the sentences to run concurrently." *Id.* ¶ 4, 724 N.W.2d at 860-61. During sentencing, the State failed to recommend "the agreed upon term of years" and instead argued by implication for a more severe sentence. *Id.* ¶ 6, 724 N.W.2d at 861. The circuit court sentenced the defendant to 90 years for the kidnapping with 30 years suspended and 25 years for the rape. *Id.* In reversing, we determined that this was a material breach of the plea-bargain agreement. *Id.* ¶ 24, 724 N.W.2d at 865. We noted that "[t]he recommendation of a specific term of years was an important benefit Vanden Hoek relied upon when he entered into the plea agreement." *Id.*; *see also Santobello v. New York*, 404 U.S. 257, 262, 92 S. Ct. 495, 499, 30 L. Ed. 2d 427 (1971) ("[W]hen a plea rests in any significant degree on a promise or agreement of the prosecutor, so that it can be said to be part of the inducement or consideration, such promise must be fulfilled.").

[¶32.] In contrast, the State herein did not argue for a more severe sentence than the parties agreed to in the plea-bargain agreement. Kleinsasser's argument that the State was required to request a range of 50 to 80 years without specifying an exact term of years is not a reasonable reading of the plain language of the agreement. Reimers testified that he told Kleinsasser prior to his entry of the plea that the State was likely going to ask for 80 years. The State's recommendation was within the agreed upon range and did not constitute a violation of the agreement. Accordingly, Reimers's failure to object to the State's request for an 80-year sentence did not constitute deficient performance.

[¶33.] Kleinsasser's second assertion is that the State presented claims for restitution which were not addressed in the plea-bargain agreement and about which he had no knowledge. Paragraph five of the plea agreement provided, "Defendant agrees to pay all fines, court costs and court-appointed attorney's fees." At sentencing, the State requested "costs of the prosecution" and provided the circuit court and Kleinsasser's counsel with a spreadsheet breaking down the costs. Kleinsasser did not object to the State's request. The circuit court waived the usual, liquidated court costs but required Kleinsasser to "reimburse the State for the costs of the defense in the amount of [$]88,611.79" and granted a lien against Kleinsasser's property to Sully County. The amount of $88,611.79 included in part: costs of the Grand Jury proceedings; housing and medical expenses for Kleinsasser in the county jail; autopsy expenses; attorney's fees; and transportation costs for taking Kleinsasser to Rapid City to meet with Dr. Manlove and to Pierre for court proceedings. The circuit court found that none of the expenses contained

"restitution costs to the victim's family for their funeral expenses or other costs incident to her death." Both the original and amended judgment, however, referred to these expenses as "restitution."

[¶34.] It is clear that the judgment incorrectly designated the award as restitution to Sully County, rather than as costs of prosecution. There was no request for restitution at the sentencing hearing—only costs—and Sully County is not a "victim" in this case entitled to restitution. *Restitution* is defined in SDCL 23A-28-2(4) as "full or partial payment of pecuniary damages to a *victim*[.]" (Emphasis added.) SDCL 22-1-2(53) defines *victim* as "any natural person *against whom* the defendant in a criminal prosecution has committed or attempted to commit a crime[.]" (Emphasis added.) Under the facts of this case, Sully County is not a victim entitled to restitution based upon this definition. *State v. Ryyth*, 2001 S.D. 50, ¶ 10, 626 N.W.2d 290, 292 (holding county does not fit statutory definition of victim under restitution statutes); *see also State v. Sprecher*, 2000 S.D. 17, ¶¶ 7-9, 606 N.W.2d 138, 139 (denying payment to county for costs of abating public nuisance because county, under the facts of the case, was not a victim entitled to restitution); *State v. Garnett*, 488 N.W.2d 695, 698 (S.D. 1992); *State v. No Neck*, 458 N.W.2d 364, 365 (S.D. 1990).

[¶35.] In *State v. Olson-Lame*, 2001 S.D. 51, 624 N.W.2d 833, we considered a request for extradition costs as restitution to Pennington County. Although we determined that Pennington County was not a victim as defined by state statute entitled to restitution, we held that costs were properly assessed as "costs of the

prosecution under SDCL 23A-27-26[.]"[3] *Id.* ¶ 8, 624 N.W.2d at 835. This statute provides in pertinent part that "[i]n all criminal actions, upon conviction of the defendant, the court may adjudge that the defendant pay the whole or any part of the costs of that particular prosecution in addition to the liquidated costs provided by [SDCL] 23-3-52." SDCL 23A-27-26. Kleinsasser was properly required to pay the costs of his prosecution upon conviction. He has presented no evidence that any portion of the award was improperly chargeable as costs not permitted by statute.

[¶36.] Importantly, Kleinsasser does not argue that he was induced to enter into the plea agreement because the costs were not itemized in the agreement or that he would not have pleaded guilty if he had known the total cost. Nor does he point to any term of the agreement that the State failed to fulfill. Thus, *Vanden Hoek*, upon which Kleinsasser relies in support of his argument, is distinguishable. Kleinsasser has failed to prove that the circuit court's finding that "[t]he State did not violate the Plea Agreement at the sentencing hearing" was clearly erroneous.

> 3. *Whether the sentencing court erred by failing to advise Kleinsasser of his* Boykin *rights.*

[¶37.] Kleinsasser correctly argues that a defendant must be advised of his *Boykin* rights as a mandatory part of any change of plea. However, relying on

---

3. SDCL 23A-27-26 provides,

> In all criminal actions, upon conviction of the defendant, the court may adjudge that the defendant pay the whole or any part of the costs of that particular prosecution in addition to the liquidated costs provided by § 23-3-52. However, the costs shall not include items of governmental expense such as juror's fees, bailiff's fees, salaries and expenses of special agents, and reporter's per diem. Payment of costs may be enforced as a civil judgment against the defendant.

language in *Monette v. Weber*, 2009 S.D. 77, 771 N.W.2d 920, Kleinsasser contends that the "sentencing" judge was obligated to inquire whether he had been previously advised of his *Boykin* rights and understood them. Kleinsasser alleges that the circuit court's failure to do so at the time of sentencing renders his conviction invalid. In response, the State argues that *Boykin* rights are only required at the time a plea is entered and that the circuit court had no obligation to advise Kleinsasser of his *Boykin* rights at the sentencing hearing.

[¶38.] "A criminal defendant entering a guilty plea waives three fundamental constitutional rights: the right against compulsory self-incrimination, the right to confront one's accusers, and the right to a trial by a jury." *Rosen v. Weber*, 2012 S.D. 15, ¶ 8, 810 N.W.2d 763, 765 (citing *Boykin*, 395 U.S. at 243, 89 S. Ct. at 1712). Further, "it is critical not only that a defendant be advised of his rights . . . but also that the defendant intentionally relinquish or abandon" these rights and that the record affirmatively establish the waiver. *Id.* (quoting *Monette,* 2009 S.D. 77, ¶ 10, 771 N.W.2d at 924).

[¶39.] Kleinsasser's reliance on *Monette* in support of his argument is misplaced. Monette appealed the habeas-corpus court's determination that his no-contest plea was voluntary, knowing, and intelligent. *Monette*, 2009 S.D. 77, ¶ 1, 771 N.W.2d at 922. Monette had "entered a change of plea pursuant to a plea agreement." *Id.* ¶ 4, 771 N.W.2d at 922. During this change-of-plea hearing, the circuit court, which we referred to as the "sentencing court," failed to inquire if the plea was being entered voluntarily and whether defendant wished to waive his constitutional rights. *Id.* ¶ 9, 771 N.W.2d at 924. Based upon the court's

deficiencies in accepting the plea, we determined the defendant's plea was unconstitutional and reversed the habeas court's determination. *Id.* Kleinsasser bases his argument on this Court's reference to the court which accepted the guilty plea as the "sentencing court." This Court's reference to the "sentencing court" was made solely to differentiate between the habeas court and the trial court—no other meaning was implied. The court's obligation to advise Monette of his rights arose from its duty in accepting his plea. In two recent cases, *State v. Bilben*, 2014 S.D. 24, 846 N.W.2d 336, and *Garcia v. State*, 2014 S.D. 5, 843 N.W.2d 345, we evaluated the adequacy of *Boykin* advisements and subsequent waivers at the time of the entry of the plea. This determination is not required at the sentencing hearing.

[¶40.]     The circuit court's duty to advise Kleinsasser of his *Boykin* rights occurred when Kleinsasser chose to enter his guilty plea. Kleinsasser's allegation that the circuit court erred in failing to canvass him or confirm he was canvassed on such rights during sentencing is meritless.

## CONCLUSION

[¶41.]     Kleinsasser has failed to prove the circuit court's findings of fact are clearly erroneous and further has failed to prove by a preponderance of the evidence that he is entitled to relief. We affirm.

[¶42.]     GILBERTSON, Chief Justice, and ZINTER and SEVERSON, Justices, and PFEIFLE, Jane, Circuit Court Judge, concur.

[¶43.]     PFEIFLE, Jane, Circuit Court Judge, sitting for WILBUR, Justice, disqualified.