#28031-a-DG
**2017 S.D. 34**

IN THE SUPREME COURT
OF THE
STATE OF SOUTH DAKOTA

* * * *

STATE OF SOUTH DAKOTA,                    Plaintiff and Appellee,

  v.

JANNO KOLLAY TALLA,                    Defendant and Appellant.

* * * *

APPEAL FROM THE CIRCUIT COURT OF
THE SECOND JUDICIAL CIRCUIT
MINNEHAHA COUNTY, SOUTH DAKOTA

* * * *

THE HONORABLE DOUGLAS E. HOFFMAN
Judge

* * * *

MARTY J. JACKLEY
Attorney General

CULLEN P. MCNEECE
Assistant Attorney General
Pierre, South Dakota                    Attorneys for plaintiff
                                        and appellee.


BEAU J. BLOUIN of
Minnehaha County Public
 Defenders Office
Sioux Falls, South Dakota                    Attorneys for defendant
                                             and appellant.


* * * *

CONSIDERED ON BRIEFS
MAY 30, 2017
OPINION FILED 06/07/17

#28031

GILBERTSON, Chief Justice

[¶1.] Janno Kollay Talla appeals his sentence of life imprisonment for one count of first-degree manslaughter. Talla argues that in light of other sentences imposed for manslaughter in Minnehaha County, as well as his alleged lack of criminal history, the circuit court abused its discretion. We affirm.

## Facts and Procedural History

[¶2.] Talla was born in Barentu, Eritrea, in 1984 and immigrated to the United States as a refugee sometime around 2012. After living in Charlotte, North Carolina, for a short time, he moved to Sioux Falls, where he began a relationship with Ammuna Gayya. The two moved in together, and in late 2013, Gayya became pregnant with Talla's child. In August 2014, prior to their child's birth, Talla obtained new employment in Worthington, Minnesota, which required him to relocate. Gayya, who was in her late teens at the time, stayed in Sioux Falls to be close to her mother. Gayya gave birth to a boy in September 2014.

[¶3.] For a time, Talla and Gayya continued their relationship, and Talla provided some financial support to Gayya and their son. When Talla would visit Sioux Falls on his days off, he would stay with Gayya and their son. However, Gayya eventually became romantically involved with another man, Danga Kotudi, and ended her relationship with Talla. According to Talla, Gayya denied having a relationship with Kotudi on several occasions when confronted by Talla. During this time, Gayya also formally sought child support from Talla.[1]

---

1. Talla actually quit his job to avoid paying child support.

[¶4.] On October 29, 2015, while visiting Sioux Falls, Talla saw Gayya with Kotudi. Talla was jealous because he wished to continue his relationship with Gayya, so he drove to Kotudi's apartment to confront them. Talla waited 30 to 40 minutes for them to return. He placed a folding knife with a six-inch blade in his pocket, intending to kill Kotudi. After Kotudi and Gayya returned, Talla went inside and confronted them. After speaking with them for several minutes, Talla informed Kotudi that the two of them were going to fight to the death. Kotudi refused, and Talla drew his weapon and stabbed Kotudi in his left arm. Kotudi fled the apartment while his friend, Banana Tsegay, and Gayya attempted to restrain Talla. Talla stabbed Gayya, puncturing her left lung and heart. Gayya attempted to flee the apartment, but only made it a few feet before collapsing in the hallway. Talla did not attempt to render aid; instead, he fled. Gayya died from her wound about an hour later, but Kotudi survived.

[¶5.] Following the encounter, Talla drove back to Worthington. Local law enforcement was waiting and arrested him as he exited the interstate highway. Talla's pants had Gayya's blood on them. Law enforcement found the folding knife in the glove compartment of Talla's car. The next day, Sioux Falls police searched Talla's car and discovered a suitcase, which contained clothes, medications, a white envelope with $2,600 cash, a 0.25 caliber handgun, and a brown wallet containing identification cards and documents for one "Malik Mensur."[2] During a subsequent

---

2. At the sentencing hearing, Talla's attorney asserted that Mensur is Talla's cousin and that Talla was in possession of Mensur's documents because Mensur was incarcerated at the time. In contrast, the State asserted that it had been unable to establish any connection between Talla and Mensur. The

(continued . . .)

interview, Talla admitted that he intended to kill Kotudi and had been planning to do so for months.

[¶6.] Talla was indicted on 12 counts, including two counts of first-degree murder (premeditated and felony murder), one count of second-degree murder, one count of attempted first-degree murder, three counts of first-degree burglary, two counts of aggravated assault, and three counts of stalking. Eventually, Talla and the State entered into a plea agreement. Talla agreed to plead guilty to one count of first-degree manslaughter and one count of attempted first-degree murder. In exchange, the State agreed to dismiss the remaining counts and to recommend concurrent sentences. The agreement did not require the State to recommend a particular length of imprisonment for either count. At a change-of-plea hearing on June 17, 2016, Talla pleaded guilty, and the State produced a written factual statement signed by Talla. Three months later, after the completion of a presentence investigation, the circuit court sentenced Talla to concurrent terms of imprisonment: 25 years for attempted first-degree murder and life for first-degree manslaughter.

[¶7.] Talla appeals, raising one issue: Whether the circuit court abused its discretion in sentencing him to imprisonment for life for first-degree manslaughter.

### Standard of Review

[¶8.] "We generally review a circuit court's decision regarding sentencing for abuse of discretion." *State v. Rice*, 2016 S.D. 18, ¶ 11, 877 N.W.2d 75, 79 (quoting

---

(. . . continued)
State theorized that Talla intended to use the documents to establish a false identity.

*State v. Chipps*, 2016 S.D. 8, ¶ 31, 874 N.W.2d 475, 486). "An abuse of discretion 'is a fundamental error of judgment, a choice outside the range of permissible choices.'" *Id.* ¶ 23, 877 N.W.2d at 83 (quoting *MacKaben v. MacKaben*, 2015 S.D. 86, ¶ 9, 871 N.W.2d 617, 622).

Analysis and Decision

[¶9.]     Talla argues the circuit court abused its discretion by sentencing him to imprisonment for life. Although Talla does not allege that his sentence is cruel and unusual in violation of the Eighth Amendment, he nevertheless contends that it is "grossly disproportionate to other sentences imposed in Minnehaha County on manslaughter in the first degree convictions in the ten years leading up to sentencing in this case." Talla also contends that "[b]y imposing a life sentence, the court denied [him] the possibility of parole at any time in the future, and consequently failed to strike an appropriate balance between retribution, rehabilitation, and deterrence."

[¶10.]     We first address Talla's proportionality argument. "[S]imilarly situated defendants should [generally] receive similar sentences. This principle naturally follows from the notion that 'when statutory ranges are established, the legislative intent is that "the more serious commissions of the crime deserve sentences at the harsher end of the spectrum."'" *Id.* ¶ 24, 877 N.W.2d at 83 (citation omitted) (quoting *State v. Bruce*, 2011 S.D. 14, ¶ 32, 796 N.W.2d 397, 407). However, each "sentencing court has broad discretion in determining the sentence to be imposed." *State v. Anderson*, 1996 S.D. 46, ¶ 30, 546 N.W.2d 395, 402. "[A] sentence within the statutory maximum generally will not be disturbed on appeal."

*Rice*, 2016 S.D. 18, ¶ 23, 877 N.W.2d at 83 (quoting *Bruce*, 2011 S.D. 14, ¶ 28, 796 N.W.2d at 406).  Thus, when a judge imposes the maximum sentence permitted by statute (as in the present case), it is sufficient that the judge could reasonably conclude the offense in question is among "the more serious commissions of the crime[.]"  *Id.* ¶ 24, 877 N.W.2d at 83 (quoting *Bruce*, 2011 S.D. 14, ¶ 32, 796 N.W.2d at 407).

[¶11.]        We think the sentencing court's implied conclusion that Talla's crime is among the more serious occurrences of first-degree manslaughter is reasonable, especially considering it occurred in the process of attempting to commit first-degree murder.  Talla intended to kill Kotudi.  He sat outside Kotudi's apartment for 30 to 40 minutes, waiting for him and Gayya to return.  Talla armed himself and entered the apartment.  He sat, talking to Kotudi and Gayya in relative calm, for several minutes.  He then challenged Kotudi to mortal combat, and when Kotudi refused, Talla attempted to kill him anyway.  When Gayya intervened, Talla stabbed her—the 19-year-old mother of his infant son—in the heart.  Even if doing so was reflexive and not intentional, Talla did not attempt to render aid to Gayya; instead, he fled.  And even after learning that Gayya died as a result of her injuries, Talla did not express significant remorse.

[¶12.]        Even so, comparing his sentence to the one imposed in *Rice*, Talla concludes he should have been sentenced to imprisonment for a term of years.  In *Rice*, the mastermind of a burglary plot that culminated in a homicide was sentenced to imprisonment for 80 years (with 20 years suspended) on conviction of one count of first-degree manslaughter.  *Id.* ¶ 9, 877 N.W.2d at 79.  Talla contends

that unlike Rice, Talla had no criminal history, had not previously exhibited violent behavior, had maintained legal employment while in the United States, and did not attempt to cover up his crime. The sentencing court noted these factors at sentencing. We also note that the presentence investigation report indicates there is only a moderate risk that Talla will reoffend. Even so, this case does not involve the type of unplanned-though-foreseeable violence that occurred in *Rice*. As noted above, Talla admittedly entered the apartment with the premeditated intent to kill Kotudi. In the course of his attempt, Talla instead killed Gayya, who as the circuit court noted, "was entirely innocent of any wrongdoing and was not complicit in any kind of illegal activity that spawned her resulting death." Thus, it would not be unreasonable for a sentencing court to conclude Talla's crime was more serious than the homicide that occurred in *Rice* despite Talla's asserted mitigating factors.[3] Thus, *Rice* does not support the conclusion that the sentencing court abused its discretion by sentencing Talla to imprisonment for life in this case.

[¶13.] Next, Talla contends that the sentencing court failed to strike a balance between retribution, rehabilitation, and deterrence. Talla essentially contends the sentencing court's view that rehabilitation was problematic was erroneous. Whether a defendant "is capable of rehabilitation [is] a fact question to be decided by the [sentencing] court." *State v. Pulfrey*, 1996 S.D. 54, ¶ 20, 548 N.W.2d 34, 39. On the question of rehabilitation, the court said:

> [I]n circumstances like this, where the individual's character
> creates a propensity to commit domestic abuse to the level of

---

3. Nor is it necessarily unreasonable for a different sentencing court to conclude the homicide that occurred in *Rice* was more serious.

> murder, the issue of rehabilitation is problematic. At the age of 31, being a middle adult, when one's mental processes are such that he concludes that he must kill his rival and put his former love interest at risk of a similar fatal result, the supposition that the individual could return to the community and engage in healthy relationships with other partners and that those partners would not be at risk of a similar fate is purely speculative in the [c]ourt's view.

The court considered Talla's mitigating factors prior to reaching this conclusion. Considering the evidence available to the sentencing court, we are not "satisfied that [the court's findings] are contrary to a clear preponderance of the evidence." *Gartner v. Temple*, 2014 S.D. 74, ¶ 8, 855 N.W.2d 846, 850 (quoting *In re Estate of Olson*, 2008 S.D. 97, ¶ 9, 757 N.W.2d 219, 222).

[¶14.] Moreover, "[r]ehabilitation 'is not a bright-line rule that must be considered in every case.'" *Rice*, 2016 S.D. 18, ¶ 26 n.6, 877 N.W.2d at 84 n.6 (quoting *State v. Milk*, 2000 S.D. 28, ¶ 18, 607 N.W.2d 14, 20); *see also Atiyeh v. Capps*, 449 U.S. 1312, 1314, 101 S. Ct. 829, 830, 66 L. Ed. 2d 785 (1981) ("[T]here is nothing in the Constitution that says that 'rehabilitation' is the sole permissible goal of incarceration . . . ."). Retribution, deterrence, incapacitation, and rehabilitation are each legitimate penological goals. *See Harmelin v. Michigan*, 501 U.S. 957, 999, 111 S. Ct. 2680, 2704, 115 L. Ed. 2d 836 (1991) (Kennedy, J., concurring in part and concurring in the judgment); *Rice*, 2016 S.D. 18, ¶ 26 n.6, 877 N.W.2d at 84 n.6. None of these goals is "preeminent over any of the others." *Anderson*, 1996 S.D. 46, ¶ 31, 546 N.W.2d at 402 (quoting *State v. Ramos*, 1996 S.D. 37, ¶ 14, 545 N.W.2d 817, 821); *see also Harmelin*, 501 U.S. at 999, 111 S. Ct. at 2704. "[T]he sentencing court determines, on a case-by-case basis, which theory is accorded priority." *Anderson*, 1996 S.D. 46, ¶ 31, 546 N.W.2d at 403.

[¶15.] As noted above, the sentencing court had serious concerns about Talla's ability to "return to the community and engage in healthy relationships with other partners[.]" Notably, the court found that Talla was not significantly remorseful. The court was also convinced that the age disparity between Talla and Gayya, Talla's response to Gayya's formal request for child support (i.e., quitting his job to avoid garnishment), and ultimately, Talla's fatal attempt to control Gayya's relationships were evidence of domestic abuse. The court also noted that Talla has two other children by two other mothers, one of whom was—like Gayya—much younger than Talla. Thus, the court was concerned that Talla's other partners (and prospective partners) would be at risk of a fate similar to Gayya's. So even if we were convinced that the court clearly erred in determining Talla's prospects for rehabilitation were purely speculative, the court's concerns also support the sentence imposed under theories of deterrence and incapacitation.

## Conclusion

[¶16.] A sentencing court could reasonably conclude that Talla's offense is among the most serious commissions of first-degree manslaughter. Our opinion in *Rice*, even when considered in the context of Talla's mitigating factors, does not suggest otherwise. The court's finding that rehabilitation was speculative is not clearly erroneous. Therefore, we are not convinced the court abused its discretion by sentencing Talla to imprisonment for life for killing Gayya.

[¶17.] We affirm.

[¶18.] ZINTER, SEVERSON, WILBUR, and KERN, Justices, concur.