#28198-a-LSW
**2017 S.D. 93**

IN THE SUPREME COURT
OF THE
STATE OF SOUTH DAKOTA

* * * *

STATE OF SOUTH DAKOTA,                    Plaintiff and Appellee,

   v.

BERTON C. TOAVS,                          Defendant and Appellant.

* * * *

APPEAL FROM THE CIRCUIT COURT OF
THE FOURTH JUDICIAL CIRCUIT
MEADE COUNTY, SOUTH DAKOTA

* * * *

THE HONORABLE JEROME A. ECKRICH, III
Retired Judge

* * * *

MARTY J. JACKLEY
Attorney General

MATTHEW W. TEMPLAR
Assistant Attorney General
Pierre, South Dakota                      Attorneys for plaintiff
                                          and appellee.

PAUL EISENBRAUN of
Grey & Eisenbraun
Rapid City, South Dakota                  Attorneys for defendant
                                          and appellant.

* * * *

CONSIDERED ON BRIEFS
ON NOVEMBER 6, 2017
OPINION FILED **12/27/17**

#28198

WILBUR, Retired Justice

[¶1.]      Berton Toavs appeals his sentences issued on two counts of first-degree manslaughter in violation of SDCL 22-16-15(3). Toavs argues the sentencing court abused its discretion in ordering him to serve two consecutive sentences of 110 and 100 years. According to Toavs, the sentencing court did not adequately consider whether Toavs was capable of rehabilitation prior to imposing the sentences. We conclude the sentencing court did not abuse its discretion and affirm Toavs's sentences.

## Background

[¶2.]      On April 26, 2016, Toavs shot and killed his girlfriend Eliza Edgins and his friend Nathan Gann at Toavs's home in Faith, South Dakota. Toavs and Edgins were in an off-and-on romantic relationship for some time, and Gann had been staying at Toavs's home for approximately six weeks prior to the incident. During the time Gann had been staying with Toavs, a romantic relationship developed between Edgins and Gann. Gann and Edgins apparently planned to leave South Dakota and continue their relationship. After hearing this news, Toavs left the house. He returned the following morning. Toavs and Edgins argued. Edgins told Toavs that he meant nothing to her and that she and Gann were going to be together. Angered, Toavs went to his bedroom and grabbed his .45 caliber Colt revolver. Toavs returned to the living room and shot Edgins multiple times. He then shot Gann, who had been sleeping on the living room floor. Both Edgins and Gann died from the gunshot wounds inflicted by Toavs.

[¶3.]        Toavs confessed to killing both Edgins and Gann, and he was indicted April 27, 2016, on two counts of premeditated first-degree murder. Subsequently, on December 21, 2016, Toavs signed a written plea agreement with the State. Toavs agreed to: (1) plead guilty to two counts of first-degree manslaughter, each a class C felony, in violation of SDCL 22-16-15(2);* (2) establish that his guilty pleas were free and voluntary and provide a sufficient written factual basis; (3) waive his right to a trial within 180 days of his initial appearance; and (4) waive his right to appeal. In return, the State dismissed both charges of first-degree murder and refrained from filing any additional charges. Toavs and the State also agreed to jointly recommend that Toavs's sentences on the two counts of first-degree manslaughter run consecutive to each other and that the two convictions be reduced to two separate judgments. However, Toavs and the State remained free to comment on the appropriate sentence and to present aggravating and mitigating evidence at the time of sentencing.

[¶4.]        The sentencing court held a hearing on March 15, 2017. The State and Toavs each presented evidence of aggravation and mitigation. After considering Toavs's presentence investigation report, the sentencing court imposed a sentence of 110 years on one conviction of first-degree manslaughter and a sentence of 100 years on the second conviction. The court ordered the sentences to run consecutive to each other.

---

*        The record reflects that Toavs pleaded guilty to two counts of first-degree manslaughter under SDCL 22-16-15(2), but the judgments of conviction reflect convictions for violating SDCL 22-16-15(3).

[¶5.] Toavs appeals his sentences, raising one issue: Whether the sentencing court abused its discretion in failing to consider the possibility of rehabilitation prior to sentencing.

## Standard of Review

[¶6.] Sentencing courts "exercise broad discretion when deciding the extent and kind of punishment to be imposed." *State v. Bausch*, 2017 S.D. 1, ¶ 39, 889 N.W.2d 404, 415, *cert. denied*, 138 S. Ct. 87 (2017) (quoting *State v. Rice*, 2016 S.D. 18, ¶ 23, 877 N.W.2d 75, 83). Therefore, "[w]e generally review a circuit court's decision regarding sentencing for abuse of discretion. An abuse of discretion is a fundamental error of judgment, a choice outside the range of permissible choices." *State v. Talla*, 2017 S.D. 34, ¶ 8, 897 N.W.2d 351, 353 (citations omitted).

## Analysis

[¶7.] Before we examine Toavs's issue, we address the State's argument that Toavs waived the right to appeal his sentences in a written plea agreement. The plea agreement stated that Toavs "will waive his right to appeal herein." "Generally, plea agreements are contractual in nature and are governed by ordinary contract principles." *Kleinsasser v. Weber*, 2016 S.D. 16, ¶ 30, 877 N.W.2d 86, 96 (quoting *State v. Waldner*, 2005 S.D. 11, ¶ 8, 692 N.W.2d 187, 190). As such, the Eighth Circuit Court of Appeals has stated that "[p]lea agreements will be strictly construed and any ambiguities in these agreements will be read against the Government and in favor of a defendant's appellate rights." *United States v. Andis*, 333 F.3d 886, 890 (8th Cir. 2003); accord *Campion v. Parkview Apartments*, 1999 S.D. 10, ¶ 34, 588 N.W.2d 897, 904 ("Ambiguities arising in a contract should be

interpreted and construed against the *scrivener*."); *United States v. Banks*, 743 F.3d 56, 58 (3rd Cir. 2014) (appellate waivers are construed strictly); *United States v. Keele*, 755 F.3d 752, 754 (5th Cir. 2014) (appellate waivers should be construed narrowly against the Government); *United States v. Hahn*, 359 F.3d 1315, 1325 (10th Cir. 2004) (quoting *Andis*, 333 F.3d at 890) (appellate waivers are construed against the Government and ambiguities resolved in favor of a defendant's appellate rights). Thus, "the burden of proof is on the Government to demonstrate that a plea agreement clearly and unambiguously waives a defendant's right to appeal." *Andis*, 333 F.3d 886 at 890. To meet this burden, it must be clear that "the appeal falls within the scope of the waiver and that both the waiver and plea agreement were entered into knowingly and voluntarily." *Id.* at 889-90. "Even when these conditions are met, however, we will not enforce a waiver where to do so would result in a miscarriage of justice." *Id.* at 890.

[¶8.] From our review, the State has not met its burden that Toavs's general waiver of his "right to appeal herein" means that Toavs unambiguously waived his right to appeal his sentences. The waiver language is ambiguous as to what appellate rights Toavs specifically waived. *See Read v. McKennan Hosp.*, 2000 S.D. 66, ¶ 23, 610 N.W.2d 782, 786 (stating mutual assent or a meeting of the minds is needed for a contract to be binding); *see also Hahn*, 359 F.3d at 1325 (recognizing the first step is determining if the disputed appeal falls within the scope of the waiver). Because of this ambiguity, we strictly construe a reading of the waiver against the State and in favor of Toavs's appellate rights. *See Andis*, 333 F.3d at 890.

[¶9.] We next turn to the merits of Toavs's claim that the sentencing court abused its discretion in not considering all of the legitimate ends of sentencing. Toavs contends that the sentencing court did not consider the possibility of rehabilitation when it imposed a combined sentence of 210 years. Toavs argues that the sentencing court only considered retribution, as evidenced by its colloquy before sentencing Toavs:

> You know, when a person dies, the world loses more than one person. And when a person's life is taken, those who remain behind the life—particularly the kids—the children in this case—that live in that world, they lose pieces, large pieces of their lives, too. So the consequences of the crimes that you've committed, the homicides of Eliza Edgins and Nathan Gann are not simply grievous, they're incalculable.

[¶10.] We have stated that "[r]etribution, deterrence, incapacitation, and rehabilitation are each legitimate penological goals." *Talla*, 2017 S.D. 34, ¶ 14, 897 N.W.2d at 355 (citing *Harmelin v. Michigan*, 501 U.S. 957, 999, 111 S. Ct. 2680, 2704, 115 L. Ed. 2d 836 (1991) (Kennedy, J., concurring in part and concurring in the judgment)). However, none of these goals have preeminence over the others. *State v. Anderson*, 1996 S.D. 46, ¶ 31, 546 N.W.2d 395, 402. "[T]he sentencing court determines, on a case-by-case basis, which theory is accorded priority." *Id.* ¶ 31, 546 N.W.2d at 403. Therefore, a sentencing court need not consider rehabilitation in every case. *Talla*, 2017 S.D. 34, ¶ 14, 897 N.W.2d at 355.

[¶11.] Toavs's capacity for rehabilitation "is a fact question to be decided by the sentencing court." *Id.* ¶ 13, 897 N.W.2d at 355 (quoting *State v. Pulfrey*, 1996 S.D. 54, ¶ 20, 548 N.W.2d 34, 39). "[F]actual determinations are subject to a clearly

erroneous standard." *Gartner v. Temple*, 2014 S.D. 74, ¶ 8, 855 N.W. 846, 850 (quoting *State v. Guthrie*, 2002 S.D. 138, ¶ 5, 654 N.W.2d 201, 203). Here, while the court did not cite Toavs's capacity for rehabilitation, it did consider Toavs's presentence investigation report and allowed Toavs to comment on this report prior to sentencing. Toavs's counsel also commented on Toavs's capacity for rehabilitation in support of a more lenient sentence and a sentence from which Toavs would be eligible for parole. The sentencing court listened to testimony regarding the support Toavs would have if he were to be rehabilitated and released on parole. Finally, the sentence itself reflects the sentencing court had rehabilitation in mind when fashioning an appropriate sentence. The court could have granted the State's request and imposed a life sentence for each count. *See* SDCL 22-16-15; SDCL 22-6-1. Yet, the court imposed a sentence that was substantially similar to that recommended in the presentence investigation report and that was for considerably less time than the maximum allowed. Thus, we are not convinced that the [sentencing] court clearly erred.

[¶12.] Still, Toavs contends that the sentencing court deprived him of the possibility of rehabilitation in sentencing him to 210 years combined—a sentence no person could survive. In this regard, Toavs fails to appreciate that a court must consider many factors relevant to crafting a sentence, not just rehabilitation. "In fashioning an appropriate sentence, courts must also look to the character and history of the defendant. This requires an examination of a defendant's 'general moral character, mentality, habits, social environment, tendencies, age, aversion or inclination to commit crime, life, family, occupation, and previous criminal record.'"

*Rice*, 2016 S.D. 18, ¶ 27, 877 N.W.2d at 84 (quoting *State v. Bruce*, 2011 S.D. 14, ¶ 29, 796 N.W.2d 397, 406).

[¶13.]     The sentencing court in this case considered all of the factors, as articulated in the presentence investigation report, before sentencing Toavs. The report specifically addressed the severity of Toavs's offenses and his prospect for rehabilitation. So even though Toavs's total sentence is longer that his expected lifespan, the sentencing court's imposition of a sentence to a term of years rather than life gives Toavs an opportunity to rehabilitate himself. *See, e.g.*, *State v. Lemley*, 1996 S.D. 91, ¶ 15, 552 N.W.2d 409, 413.

[¶14.]     "Absent specific authority, it is not the role of an appellate court to substitute its judgment for that of the sentencing court as to the appropriateness of a particular sentence." *State v. Blair*, 2006 S.D. 75, ¶ 20, 721 N.W.2d 55, 61 (quoting *State v. Garber*, 2004 S.D. 2, ¶ 13, 674 N.W.2d 320, 323). Therefore, we cannot agree with Toavs's claim that the sentencing court abused its discretion during sentencing. There is nothing in the record to suggest the sentencing court made "a choice outside the range of permissible choices." *Talla*, 2017 S.D. 34, ¶ 8, 897 N.W.2d 351, 353 (quoting *Rice*, 2016 S.D. 18, ¶ 23, 877 N.W.2d at 83). The sentencing court did not abuse its discretion in sentencing Toavs to serve consecutive sentences of 110 and 100 years.

[¶15.]     We affirm.

[¶16.]     GILBERTSON, Chief Justice, and ZINTER, SEVERSON, and KERN, Justices, concur.

[¶17.]     JENSEN, Justice, did not participate.